# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 14-3828

_____

United States of America

*Plaintiff - Appellee*

v.

Kenneth Ray Borders

*Defendant - Appellant*

_____

## No. 15-1648

_____

United States of America

*Plaintiff - Appellee*

v.

Jon Dirk Dickerson, also known as Dirk

*Defendant - Appellant*

_____

## No. 15-1651

_____

United States of America

*Plaintiff - Appellee*

v.

Kyle Wayne Dickerson

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 16, 2016
Filed: July 12, 2016 (Corrected July 12, 2016)

_____

Before WOLLMAN, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Kenneth Ray Borders, Jon Dirk Dickerson, and Kyle Wayne Dickerson appeal their convictions for crimes involving stolen goods and vehicles. At trial, the government proved a conspiracy, beginning in about 1998, to steal commercial trucks, trailers, and cargo, and alter vehicle identification information. Jon owned and operated several trucking companies, including Night Line Trucking; his son Kyle worked at the companies and partly owned Night Line Trucking. Jon would give Borders "shopping lists" of trucks and trailers to steal. Borders stole and sold the vehicles and trailers to the Dickersons. Borders also sold stolen cargo to other customers and stored stolen property at a storage unit paid for by the Dickersons. A government witness, Jaccard Fears, testified to working for the Dickersons for two years, falsifying paperwork at their direction, going on scouting missions with Borders, and helping Borders clean stolen trucks. Another witness testified that Jon siphoned fuel at night, stole license plates and fuel tax stickers in order to create false

-2-

registration and insurance documents, and directed him to steal a truck. The witness also testified Kyle removed VIN plates and cut up trailers to sell for scrap.

A jury convicted Borders of conspiracy, aiding and abetting the transportation of stolen goods, and aiding and abetting the possession of stolen vehicles. The jury convicted Jon and Kyle of conspiracy, aiding and abetting the possession of stolen goods, and aiding and abetting the possession of stolen vehicles. Borders was sentenced to 262 months, Jon 188 months, and Kyle 110 months in prison. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

Defendants challenge the finding of a single conspiracy, arguing the district court should have granted judgment of acquittal due to a variance, or instructed the jury on multiple conspiracies. Because Defendants did not raise this issue at trial, this court reviews for plain error. *United States v. Buckley*, 525 F.3d 629, 633 (8th Cir. 2008). Plain error means an error that is clear under current law, caused prejudice, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Delgado*, 653 F.3d 729, 735 (8th Cir. 2011), *citing United States v. Olano*, 507 U.S. 725, 732 (1993).

A single conspiracy requires "one overall agreement." *United States v. Morales*, 113 F.3d 116, 119 (8th Cir. 1997). It "is not proved by a mere overlap of personnel or knowledge of another's illegal conduct. Rather, to prove that individual agreements among separate conspirators were made to advance a single enterprise, the government must show that the conspirators each were motivated by a common purpose." *United States v. Peyro*, 786 F.2d 826, 829 (8th Cir. 1986) (internal citations omitted). "A variance results where a single conspiracy is charged but the evidence at trial shows multiple conspiracies." *Morales*, 113 F.3d at 119. This court considers

the totality of the circumstances, including the nature of the activities, their location, time frame, participants involved. ***Id.***

The totality of the circumstances supports the single conspiracy finding. The government presented evidence that, from about 1998 until 2012, Jon would give Borders a shopping list of trucks and trailers to steal; Borders would steal them; and Kyle would remove the VIN numbers to prevent police detection.

Defendants argue the special jury verdict forms demonstrate a variance. Special verdict forms required the jury to find each defendant's purposes in carrying out the conspiracy. For all Defendants, the jury marked possession of stolen vehicles (18 U.S.C. § 2313) and possession of stolen goods (§ 2315). For Borders, the jury also marked transportation of stolen goods (§ 2314), and for the Dickersons, the jury marked altering or removing motor vehicle identification numbers (§ 511). According to Defendants, the special verdict forms show the jury found two conspiracies: (1) between Borders and the Dickersons to possess stolen vehicles and goods, and (2) between the Dickersons to alter and remove VIN numbers. Under plain error review, it is not enough for Defendants to present a plausible argument for the existence of an error. Rather, the error must be "clear under current law." ***Delgado***, 653 F.3d at 735, *citing **Olano***, 507 U.S. at 732. Defendants have not demonstrated it is clear under current law that special verdict forms are alone sufficient to establish a variance, especially when the jury also finds the defendants guilty of a single conspiracy.

The jury could reasonably find a single conspiracy existed and each defendant a knowing member of it.

## II.

Kyle contests the convictions of four aiding and abetting charges. This court reviews de novo the sufficiency of the evidence, drawing all reasonable inferences in favor of the verdict. ***United States v. Nguyen***, 758 F.3d 1024, 1029 (8th Cir. 2014).

-4-

An aiding and abetting conviction requires the government to prove a defendant took an affirmative act to further the underlying criminal offense, with the intent of facilitating the offense. ***Rosemond v. United States***, 134 S. Ct. 1240, 1245 (2014). "An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged. . . ." ***Id.*** at 1248. The government may use circumstantial evidence. ***United States v. Duranseau***, 26 F.3d 804, 809 (8th Cir. 1994).

In Count 2, the jury convicted Kyle of aiding and abetting the unlawful transportation of a stolen vehicle from Missouri to Florida. Borders stole the truck, and Fears and a broker arranged its transportation. However, Fears testified that he acted under Kyle's authorization—"I was given permission by Jon and Kyle to book freight under Nightline and D&T." The broker paid "K. Wayne Dickerson" for shipping the load. And, two investigators spoke with Kyle on the phone about the truck. Viewed in the light most favorable to the verdict, this evidence is sufficient to support the conviction.

In Counts 18, 20, and 25, the jury convicted Kyle for aiding and abetting the possession of stolen goods and vehicles, found during a search of a storage unit rented by Jon and Kyle. Kyle contends he did not know that stolen goods and vehicles were being stored at the unit. The government's only contrary evidence is that Kyle rented the unit and had a key. This is insufficient to support the conclusion that Kyle took an affirmative act with the intent to aid in the storage of stolen goods and vehicles. *See* ***Rosemond***, 134 S. Ct. at 1248.

The conviction for Count 2 is affirmed. The convictions for Counts 18, 20, and 25 are vacated.

III.

Defendants challenge several evidentiary rulings, which are reviewed for abuse of discretion. *See **United States v. Jackson***, 67 F.3d 1359, 1366 (8th Cir. 1995).

A.

Defendants argue the district court erred in admitting evidence of Department of Transportation civil violations by the Dickersons. The government submitted evidence that the Dickersons used unsafe trucks, failed to drug-test drivers, and failed to pay fines, resulting in several cease-and-desist orders. The government also submitted a Record Consolidation Order, finding Jon Dickerson operated numerous businesses under different identities to avoid complying with DOT orders. The Consolidation Order was issued in July 2013—six months after the indictment.

According to the government, the evidence was relevant to establish the Dickersons' tendency to abuse their trucks, creating the need for Borders to steal other trucks. However, evidence of civil violations cannot be used to prove criminal liability, making the question one of undue prejudice, not relevance. *See **United States v. Parker***, 364 F.3d 934, 942 (8th Cir. 2004) ("The paramount concern for the trial judge . . . is not one of relevancy, because . . . evidence of civil violations is clearly relevant insofar as a defendant's knowledge and violation of the regulations are relevant to show intent and motive. Instead, the question is one of undue prejudice."). *See also **United States v. Hilliard***, 31 F.3d 1509, 1516 (10th Cir. 1994) ("Although the evidence concerning a civil violation may be used to prove knowledge or intent, it may not be used to prove criminal liability."). Admission of civil violations is permissible if the district court takes "painstaking care to guard against the possibility that the defendant would be convicted of a federal crime because he violated civil violations." ***Parker***, 364 F.3d at 943 (noting the district court had

"explicitly admonished the jury that the trial was 'not a lawsuit claiming violation of the Federal Trade Commission, FTC, requirements'").

Here, the record shows no such painstaking care. Instead, with no limiting instruction, the district court allowed the government to discuss the violations in opening and closing arguments and spend almost the entire first day of trial questioning witnesses about the violations. The jury heard testimony about more than 100 incidents involving DOT violations. This was error. However, "[a]n erroneous evidentiary ruling is harmless . . . if it did not have a substantial influence on the jury's verdict." *United States v. Adejumo*, 772 F.3d 513, 525 (8th Cir. 2014). Even without the civil violations evidence, the government presented substantial evidence to support the convictions for Jon, Kyle, and Borders.

Any error in admitting the civil violations evidence was harmless.

B.

Borders and Jon Dickerson argue the district court abused its discretion by limiting cross-examination on the benefits received by cooperating witnesses. The Confrontation Clause of the Sixth Amendment guarantees a defendant's right to confront witnesses against him. "The primary purpose of this right is to guarantee the opportunity for effective cross-examination, particularly with respect to a witness's potential bias." *United States v. Walley*, 567 F.3d 354, 358 (8th Cir. 2009).

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The question is whether a "reasonable jury might have received a significantly different impression of [the witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Id.* at 680. Here, the district court limited examination to questions about the witness's (1) charge, (2) range of punishment, (3) sentenced imposed, and (4) that the witness hoped to receive a lesser sentence through cooperation. *See United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1123 (8th Cir. 2013) (upholding similar limits).

The district court did not abuse its discretion.

C.

Borders challenges the admission of a 2003 plea agreement, where he admitted to stealing a trailer. He argues admission violated the Double Jeopardy Clause and rendered his plea involuntary, particularly because the same United States Attorney's office prosecuted the 2003 case and this case. "The Double Jeopardy Clause . . . does not forbid a conspiracy prosecution merely because the defendant previously was convicted for a substantive offense that might have constituted an overt act in the conspiracy." *United States v. Pierre*, 795 F.3d 847, 852 (8th Cir. 2015), *citing United States v. Felix*, 503 U.S. 378, 391 (1992). This is also true for plea agreements. *See United States v. Williams*, 104 F.3d 213, 216-17 (8th Cir. 1997). A plea is rendered involuntary only if the prosecutors "actively hid" knowledge of the later prosecution or "colluded" with officials intending to use the statements in a subsequent trial. *Id.* at 216.

Even assuming the district court erred in admitting the plea agreement, it "did not have a substantial influence on the jury's verdict." *See Adejumo*, 772 F.3d at 525. The government used the plea agreement to establish an overt act in furtherance of the conspiracy. Regardless, the government presented evidence of other overt acts, sufficient to establish Borders's participation in the conspiracy. Any error in admitting the plea agreement did not cause prejudice.

D.

Borders objects to the government's use of a summary exhibit to present the timeline of the conspiracy under Federal Rule of Evidence 1006. Because Borders did not object at trial, this court reviews for plain error. *Buckley*, 525 F.3d at 633. Summary evidence is proper "when it assists the jury in understanding the testimony already introduced and fairly summarizes trial evidence." *Adejumo*, 772 F.3d at 524 (internal quotation marks omitted). Although the government's summary exhibit was introduced before the summarized evidence, the exhibit did not prejudice Borders, or seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See id.* at 525 ("When, as here, the government's evidence of a defendant's guilt is so overwhelming, any error related to the admission of a summary chart is harmless.").

IV.

Defendants bring several sentencing challenges. The application of a sentencing enhancement is reviewed de novo; the factual basis is reviewed for clear error. *United States v. Collins*, 754 F.3d 626, 629 (8th Cir. 2014). If a defendant objects to factual statements in the presentencing reports, the government must prove those facts by a preponderance of the evidence. *United States v. Bowers*, 743 F.3d 1182, 1184 (8th Cir. 2014).

## A.

Defendants challenge application of the total loss enhancement. They stipulated that, in the aggregate, the total loss for all criminal activities exceeded $1 million, but now contest their liability for the entirety of the loss. To determine enhancements in the case of "jointly undertaken criminal activity," the Guidelines allow consideration of "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." **U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B)** (2013). *See also Adejumo*, 772 F.3d at 533 ("In determining the individual defendant's relevant conduct, the district court must look at what the individual has agreed to do and whether the actions of others in the conspiracy were foreseeable from his vantage point.").

Relying on his multiple conspiracies argument, Borders contends he can be held liable only for the losses from the conspiracy to possess stolen vehicles and goods, and not the separate conspiracy between the Dickersons to alter VIN numbers. Because he did not raise this to the district court, this court reviews for plain error. *Bowers*, 743 F.3d at 1184-85. Whether the government proved multiple conspiracies is irrelevant. Borders can be held liable for any loss from activities reasonably foreseeable, within the scope, and in furtherance of, the criminal activity. *See* **§ 1B1.3(a)(1)(B)**. Fears testified Borders watched him clean VIN numbers off trucks and trailers, which aided the Defendants in possessing stolen vehicles and goods without police detection. Even if the Dickersons were involved in a separate conspiracy to alter VIN numbers, Borders knew of the activity and knew it furthered their conspiracy to steal trucks and trailers.

Jon argues he is not liable for the losses from the theft of a Keystone Automotive truck, Budweiser beer, and Nike shoes. Borders stole these items, assisted at times by Fears—Jon's employee. Jon stored Borders' stolen trucks and

-10-

trailers at his storage unit. Even if he did not specifically know about the Keystone truck, beer, and shoes, Jon knew that Borders regularly stole trucks and trailers with cargo. The thefts were foreseeable, and furthered the conspiracy to steal trucks, trailers, and cargo.

The district court did not commit plain error in applying the sentencing enhancement for the total loss exceeding $1 million.[1]

## B.

Defendants challenge application of the "in the business of receiving and selling stolen property" enhancement. *See* **§ 2B1.1(b)(4)**. They argue it applies only to professional fences, not "to a defendant who merely sells goods that he himself has stolen, or merely uses goods stolen by and received from others." *See* ***United States v. Vigil***, 644 F.3d 1114, 1118 (10th Cir. 2011).[2]

This court agrees. The fence requirement accounts for the plain language of the enhancement, which requires both "receiving *and* selling stolen property." *See* **§ 2B1.1(b)(4)** (emphasis added). *See also* ***United States v. Kimbrew***, 406 F.3d 1149, 1152 (9th Cir. 2005) ("Nearly every circuit that has addressed the meaning of this enhancement has agreed 'that a thief who sells goods that he himself has stolen is not in the business of receiving and selling property."); ***Vigil***, 644 F.3d at 1118-19 (and cases cited therein); ***United States v. Sutton***, 77 F.3d 91, 94 (5th Cir. 1996).

---

[1] Because this court vacates three of Kyle's convictions, it remands for a new sentencing hearing without addressing his amount-of-loss argument.

[2] Because Borders did not object to this enhancement, his challenge is reviewed for plain error. *See* ***Buckley***, 525 F.3d at 633.

The government invokes *United States v. Vickers*, 528 F.3d 1116 (8th Cir. 2008). Nothing here conflicts with *Vickers*. *Vickers* adopts a totality of the circumstances test for the "in the business" enhancement, as stated in (1) the Sentencing Commission's Comment 5,[3] and (2) the First Circuit's decision in *St. Cyr*. *See id.* at 1120-21, *citing **United States v. St. Cyr***, 977 F.2d 698 (1st Cir. 1992). Under either version of the test the "in the business" enhancement applies only to defendants who are fences. *See **United States v. McMinn***, 103 F.3d 216, 222 (1st Cir. 1997) ("*St. Cyr* neither expressed nor implied disapproval of the basic proposition that the ITB enhancement guideline should apply only to 'professional fences.'"); **U.S.S.G. app. C, amend. 617** (noting the totality of the circumstances "more properly targets the conduct of the individual who is *actually in the business of fencing*." (emphasis added)). *Vickers* establishes the test—totality of the circumstances. And,

---

[3] *See also* **U.S.S.G. § 2B1.1, cmt. 5**:

> For purposes of subsection (b)(4), the court shall consider the following non-exhaustive list of factors in determining whether the defendant was in the business of receiving and selling stolen property:
>
> (A) The regularity and sophistication of the defendant's activities.
>
> (B) The value and size of the inventory of stolen property maintained by the defendant.
>
> (C) The extent to which the defendant's activities encouraged or facilitated other crimes.
>
> (D) The defendant's past activities involving stolen property.

this test answers two questions—whether the defendant (1) was a fence ("receiving and selling stolen property", and (2) was "in the business" of fencing.[4]

Jon gave Borders "shopping lists" of trucks and trailers to steal. He also stole trucks, license plates, and fuel-tax stickers. He directed Kyle to cut up any unusable part of the trucks and trailers to sell for scrap. Jon had a prior state conviction for receiving stolen property. The value of property stolen exceeded $1 million dollars. In light of the totality of the circumstances, it was not clear error to apply the "in the business" enhancement to Jon.

Borders stole and sold trucks, trailers, and cargo. He rented a storage unit for the stolen property, and sold the property to numerous buyers. Even if he was not himself a fence, he personally participated in Jon's activities. He often scouted and stole trucks with Fears—Jon's employee. He stored stolen property at Jon's storage facility. And, he filled Jon's "shopping lists." He had two prior federal convictions for thefts of goods and transportation of stolen goods, and a state conviction for receiving stolen property. It was not plain error to apply the "in the business" enhancement to Borders.[5]

---

[4] *See also* **Vigil**, 644 F.3d at 1120 ("[I]n construing the ITB Enhancement, courts have found that adoption of the 'totality-of-the-circumstances' test—rather than the 'fence' test—does not alter the threshold requirement that the defendant be a 'fence.'"); **Kimbrew**, 406 F.3d at 1149 ("[T]here is nothing inconsistent about adopting a totality of the circumstances approach to the 'in the business' question, while also requiring a defendant to be a fence—to receive and sell property stolen by others—before the enhancement applies."); **United States v. Saunders**, 318 F.3d 1257 (11th Cir. 2003) (same).

[5] Because this court vacates three of Kyle's convictions, it remands for a new sentencing hearing without addressing his "in the business" argument.

C.

Defendants argues it was impermissible double counting to apply the "in the business" enhancement and a 2-level enhancement because "the offense involved an organized scheme to steal or receive stolen" vehicles, vehicle parts, and cargo. **USSG § 2B1.1(b)(14)**. This court reviews de novo "whether the district court's application of the sentencing guidelines amounts to impermissible counting." ***United States v. Myers***, 598 F.3d 474, 475-76 (8th Cir. 2010). "Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been *fully* accounted for by application of another part of the Guidelines." ***United States v. Rohwedder***, 243 F.3d 423, 426-27 (8th Cir. 2001) (emphasis added). The "in the business" enhancement addresses the harm of fencing. *See* ***Vickers***, 528 F.3d at 1121. The "stolen vehicle" enhancement addresses the harm to the transportation industry that results from either buying or selling stolen vehicles. It was not impermissible double counting to apply both enhancements.

D.

Borders challenges application of the leader/organizer enhancement—a 4-level enhancement if the defendant is "an organizer or leader of a criminal activity that involved five or more participants. . . ." **§ 3B1.1(a)**. The enhancement depends on: (1) the defendant's exercise of decision making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. **Application Note 4**. A defendant need not be the *only* organizer or leader, or have led all other participants. ***United States v. Bahena***, 223 F.3d 797, 804 (8th Cir. 2000). However, this enhancement "always require[s] evidence that the defendant directed or procured the aid of underlings." ***Adejumo***, 772 F.3d at 532. Here, Borders led

scouting parties to find vehicles. He directed Fears to remove VIN numbers to prevent police detection. He stole merchandise and arranged for its transportation, storage, and purchase. It was not clear error to apply the 4-level leader/organizer enhancement.

Borders also challenges the 2-level enhancement for "sophisticated means." *See* **§ 2B1.1(10)**. "Sophisticated means" are "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." ***Adejumo***, 772 F.3d at 531, *quoting* **U.S.S.G. § 2B1.1(b)(1), cmt. n. 9(B)**. The enhancement applies when "the offense conduct, viewed as a whole, was notably more intricate than that of the garden-variety offense." ***Id.*** "Even if any single step is not complicated, repetitive and coordinated conduct can amount to a sophisticated scheme." ***United States v. Fiorito***, 640 F.3d 338, 351 (8th Cir. 2011). Here, Borders was connected to at least nine separate events, over a period of four years, involving six trucks, fifteen trailers, and thousands of dollars in cargo. He conducted scouting missions, worked with Jon to fill "shopping lists," procured buyers, and gave trucks and trailers to the Dickersons to remove VIN numbers. It was not clear error to apply the 2-level enhancement for "sophisticated means."

Finally, Borders argues he received a disparate sentence. "When a single defendant asserts on appeal that a similarly situated co-conspirator was sentenced differently, and both sentences are within the range of reasonableness, there is no principled basis for an appellate court to say which defendant received the 'appropriate' sentence." ***United States v. Fry***, 792 F.3d 884, 893 (8th Cir. 2015). All defendants received sentences within their Guidelines ranges and are presumptively reasonable on appeal. *See* ***Rita v. United States***, 551 U.S. 338, 350-51 (2007).

The district court did not give Borders a disparate sentence.

\* \* \* \* \* \* \*

The case is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

_____