# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2125
_____

United States of America

*Plaintiff - Appellee*

v.

Bryan Binkholder

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 15, 2016
Filed: August 12, 2016
_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Bryan Binkholder pleaded guilty to four counts of wire fraud in violation of 18 U.S.C. § 1343. He now appeals his sentence. After careful consideration of the issues he presents, we reverse and remand for further consideration of whether a particular individual, M.U., should be considered a victim of Binkholder's scheme for purposes of sentencing, and otherwise affirm the judgment of the district court.

## I. Background

Binkholder operated as an investment advisor in the St. Louis area. He ran a business called The Financial Coach, advising clients about investment strategies and financial planning. He also provided general financial advice to the public via his websites, YouTube channel, radio show, and various books and articles. Between 2008 and 2012, Binkholder engaged in a real estate investment scheme he called the "hard money lending program."[1] Binkholder solicited roughly 20 investors for his program, many of whom were individuals of retirement age seeking an investment for their retirement funds. Binkholder told prospective investors that he was working with various real estate developers who either could not or did not want to seek financing for their development projects from traditional banking institutions. Binkholder explained that he would act as a bank, taking money from investors and lending it to the developers. He said that the developers would pay a high rate of interest, which would then be shared between Binkholder and the investors. Binkholder also represented that the investor's principal investment would be secured by a deed of trust on a specific piece of real property.

However, after receiving the investments, Binkholder commingled the funds and used them to pay his own personal and business expenses. He also used investors' principal funds to make purported "interest" payments to the same or other investors. Binkholder also failed to disclose to investors that the hard money lending program had insufficient borrowers to produce the returns he had promised. Instead, Binkholder misrepresented the success of the program in an effort to induce additional investment and reinvestment. When the United States Postal Inspection Service eventually contacted Binkholder's investors and told them they might be victims of

---

[1]Generally speaking, hard money loans are a high-risk, high-interest type of loan secured by real property.

an unlawful scheme, Binkholder responded by sending the investors a letter falsely assuring them that the lending program was doing well and generating income.

Binkholder was ultimately charged with four counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of bank fraud in violation of 18 U.S.C. § 1344 in connection with his hard money lending program. On January 8, 2015, Binkholder pleaded guilty to the four wire fraud counts pursuant to a written plea agreement. In the plea agreement, the parties agreed on certain Guidelines calculations, the government agreed to dismiss the bank fraud charge at the time of sentencing, and Binkholder agreed to waive certain of his appeal rights. The parties also identified a disagreement as to whether a person known as M.U. was a victim. If the court determined M.U. was a victim, the parties agreed that the total offense level was 28; if the court determined he was not, they agreed that the total offense level was 26. These calculations also assumed that Binkholder would receive a 3-level reduction for acceptance of responsibility, although the government reserved the right to challenge that reduction at sentencing based on any new information received after the taking of Binkholder's guilty plea.[2]

At sentencing on May 15, 2015, the district court determined that M.U. was a victim for purposes of sentencing, denied a reduction for acceptance of responsibility, and calculated a total offense level of 31. With a criminal history category of I, Binkholder's advisory Sentencing Guidelines range was 108–135 months' imprisonment. The district court ultimately sentenced Binkholder to 108 months' imprisonment followed by 3 years of supervised release, and ordered him to pay $3,655,968.89 in restitution. Binkholder appeals, challenging four aspects of his sentencing.

---

[2]The government ultimately withdrew its support for the reduction, leaving the issue to the district court's discretion.

## II. Appeal Waiver

As an initial matter, we must consider whether Binkholder's appeal waiver precludes this appeal.  See United States v. Scott, 627 F.3d 702, 704 (8th Cir. 2010) (we review the "validity and applicability" of an appeal waiver de novo).  In his written plea agreement, Binkholder waived "all rights to appeal all sentencing issues other than criminal history" so long as the district court "accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range."  Binkholder argues that the total offense level contemplated by the plea agreement was either 26 or 28, and because the district court ultimately determined that the total offense level was 31, his waiver cannot be enforced to bar this appeal.

We agree.  The government has the burden to establish that a given appeal is "clearly and unambiguously" within the scope of an appeal waiver.  United States v. McIntosh, 492 F.3d 956, 959 (8th Cir. 2007).  Here, the parties agreed that Binkholder should receive a 3-level reduction for acceptance of responsibility, with the government reserving the right to argue against it if it "receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this [re]duction."  The parties also agreed that the "Estimated Total Offense Level" was either 26 or 28, and did not include a contingency for the possibility that the reduction for acceptance of responsibility might not apply.  Finally Binkholder waived his right to appeal "in the event the Court . . . accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein."  Reading the agreement as a whole, there are two possible constructions of the term "agreed to herein" in the appeal waiver: Either the total offense level "agreed to herein" includes levels 26 and 28, as well as any adjustments to those levels otherwise permissible under the plea agreement; or it encompasses only the two possible total offense levels that are identified in the agreement and are thus specifically  "agreed to herein."  We construe this ambiguity in Binkholder's favor, United States v. Andis,

333 F.3d 886, 890 (8th Cir. 2003) (en banc), and conclude that because the district court did not apply one of the two total offense levels specifically contemplated by the plea agreement, Binkholder's appeal waiver does not preclude this appeal.

## III. Acceptance of Responsibility

Binkholder argues that the district court erroneously denied his request for a reduction in his offense level for acceptance of responsibility. Here, the district court denied the reduction because Binkholder continued to engage in fraudulent or dishonest activity after pleading guilty on January 8, 2015. Later that same month, Binkholder attempted to resell several properties he had previously sold in July 2014. He tried to complete this sale without disclosing to the prospective buyers the fact of his federal criminal charges, the active lis pendens on the properties, or the prior sale of the properties. In March 2015, the government filed a petition for revocation of Binkholder's bond based on this conduct. The magistrate judge found that Binkholder had "committ[ed] substantial criminal acts similar in nature to those to which he pled guilty," and revoked his bond. Binkholder's Presentence Investigation Report (PSR) noted the magistrate judge's finding, and recommended that Binkholder not receive a reduction for acceptance of responsibility. At sentencing, the district court pointed out that the conduct considered at the bond revocation hearing was "virtually the same" type of fraudulent behavior that formed the basis of Binkholder's convictions. The court then adopted the facts as stated in the PSR, and determined that Binkholder was not eligible for a reduction in his offense level for acceptance of responsibility.

Binkholder has the burden of establishing he is entitled to receive a reduction in his offense level for acceptance of responsibility, United States v. Janis, 71 F.3d 308, 310 (8th Cir. 1995), and we will reverse the district court's denial of a reduction "only if it is so clearly erroneous as to be without foundation," United States v. Adejumo, 772 F.3d 513, 536 (8th Cir. 2014), cert. denied sub nom. Okeayainneh v. United States, 135 S. Ct. 1869 (2015) (quoting United States v. William, 681 F.3d

936, 938 (8th Cir. 2012)). On appeal, Binkholder argues there was no evidence that he intended to defraud the would-be purchaser of the properties. He asserts that there was therefore insufficient evidence that he engaged in criminal conduct. But conduct need not be criminal to be inconsistent with acceptance of responsibility. See United States v. Drapeau, 943 F.2d 27, 28 (8th Cir. 1991). Conducting a real estate transaction without disclosing pertinent information about an ongoing federal criminal case premised on real estate investment fraud could very well be considered conduct inconsistent with acceptance of responsibility, even if the transaction was not independently criminal. See also USSG § 3E1.1(a) cmt. n.3 (a defendant who seeks to benefit from a reduction for acceptance of responsibility must "clearly demonstrate[] acceptance of responsibility for his offense," and while a guilty plea combined with truthfully admitting to the offense conduct is significant evidence in the defendant's favor, it "may be outweighed" by conduct that is inconsistent with acceptance of responsibility).

Binkholder also argues that the district court improperly relied on the magistrate judge's bond revocation decision to deny the reduction, because the standard of proof is different in the two contexts. The PSR did refer to the magistrate judge's decision when recommending denial of the reduction, but there is no indication that the district court improperly deferred to that decision at sentencing. See United States v. Schlosser, 558 F.3d 736, 741 (8th Cir. 2009) (where the district court relied on the facts enumerated in the PSR and incident report in deciding to impose an upward variance, the court had not improperly relied on the magistrate judge's bond revocation decision). Rather, the court adopted the facts described in the PSR and concluded, based on those facts, that Binkholder was not entitled to the reduction.

Otherwise, Binkholder recites only the facts that would have supported a finding of acceptance of responsibility, asserting that they were sufficient to support the reduction. But the district court "is in a unique position to evaluate a defendant's acceptance of responsibility," and that evaluation "is entitled to great deference on

review." USSG § 3E1.1 cmt. n.5. Here, the district court determined that Binkholder's post-plea conduct was inconsistent with a finding that he had accepted responsibility for his offenses. Upon review of the sentencing record, we find no clear error in that determination.

## IV. Writ of Mandamus and Victim Status

In their plea agreement, the parties expressly disagreed on whether M.U. was a victim for purposes of sentencing, leaving for the court to determine whether M.U.'s "investment should be included as relevant conduct." If M.U. was a victim, the total loss associated with Binkholder's scheme would result in an 18-level increase in his offense level pursuant to USSG § 2B1.1; if not, the total loss would result in only a 16-level increase.[3] On January 27, 2015, the district court held an evidentiary hearing on whether M.U. was a victim. After additional briefing on the issue, the district court issued a written decision on February 9, finding that M.U. was "not a victim for purposes of sentencing." The court found that M.U. was a sophisticated businessperson who was complicit in Binkholder's scheme, and the mere fact that he lost money as a result of his involvement with Binkholder was insufficient to make him a victim.

M.U. then filed a motion with the district court asking that he be recognized as a victim pursuant to the Crime Victims' Rights Act (CVRA). See 18 U.S.C. § 3771. The district court denied M.U.'s motion on March 3, 2015, concluding that M.U. could not avail himself of the CVRA's protections because the court had already determined that he was not a victim. On April 27, 2015, M.U. filed a petition for a

---

[3]The estimated loss of all victims excluding M.U. was $2,332,969, and M.U.'s estimated loss was $1,075,000. The parties therefore agreed that if M.U. was not a victim, the total loss was greater than $1 million but less than $2.5 million, and if M.U. was a victim, the total loss was greater than $2.5 million but less than $7 million.

writ of mandamus asking this court to order the district court to vacate its prior decision and recognize M.U. as a victim under the CVRA. On April 30, 2015, we granted M.U.'s petition and directed the district court to enter an order recognizing M.U. as a crime victim pursuant to the CVRA. The district court did so, entering an order vacating its orders of February 9 and March 3 and finding that M.U. "is a victim pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771."

At sentencing on May 15, 2015, Binkholder objected to M.U. being considered a victim for purposes of sentencing. The district court overruled the objection, stating that it would "stand by the Eighth Circuit decision."[4] The court therefore included M.U.'s investment when calculating loss, resulting in a total offense level of 31 (level 28 as agreed to by the parties if M.U. was a victim, without the originally anticipated 3-level reduction for acceptance of responsibility), and imposed sentence accordingly. Binkholder argues that the district court erroneously considered our mandate ordering that M.U. be recognized as a victim under the CVRA to be dispositive of M.U.'s victim status in the sentencing context. He argues that the CVRA victim status determination and the victim status determination under the Sentencing Guidelines are distinct inquiries, and that the district court erred by not conducting a separate analysis under each.

The CVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). Under application note 1(A) to § 2B1.1 of the Sentencing Guidelines, "[v]ictim means . . .

---

[4]An additional relevant factor here is that Binkholder apparently did not contest, and may not have had the opportunity to contest, M.U.'s petition for a writ of mandamus. See 18 U.S.C. § 3771(d)(3) ("[t]he court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed"). We have significant concerns about the due process implications of the writ effectively increasing Binkholder's Guidelines range by two years if he did not have the opportunity to contest the petition.

any person who sustained any part of the actual loss determined under subsection (b)(1)." Though these definitions are similar, they are not necessarily coextensive. See United States v. Niebuhr, 456 F. App'x 36, 38 (2d Cir. 2012) (unpublished). While the CVRA is intended to protect the rights of crime victims[5] and ensure that they receive proper restitution for their injuries, the Guidelines are meant to assess the culpability of the defendant. Compare United States v. Alexander, 679 F.3d 721, 731 (8th Cir. 2012) ("While the amount of loss calculation looks to the greater of actual or intended loss, the amount of restitution under the MVRA 'cannot exceed the actual, provable loss realized by the victims.'") (quoting United States v. Frazier, 651 F.3d 899, 905 (8th Cir. 2011)) with United States v. Stennis-Williams, 557 F.3d 927, 930 (8th Cir. 2009) ("[T]he Guidelines did not entitle Defendant to have the money she returned credited against the amount of loss for purposes of calculating her offense level," because return of the money did not diminish her culpability for the original theft). Thus, the determination of who is a victim under the CVRA is not necessarily dispositive of who is a victim under the Sentencing Guidelines.

Here, the district court appears to have concluded at sentencing that our mandate requiring the court to recognize M.U. as a crime victim pursuant to the CVRA also required it to find that M.U. was a victim for Guidelines purposes.[6] This

---

[5]The rights protected by the CVRA include "[t]he right to be reasonably protected from the accused"; the right to notice of public court proceedings or parole proceedings; "[t]he right to be reasonably heard at any public proceeding . . . involving release, plea, sentencing, or any parole proceeding"; "[t]he reasonable right to confer with the attorney for the Government"; "[t]he right to full and timely restitution as provided in law"; and "[t]he right to be treated with fairness and respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a).

[6]With respect to the dissent's assertion that the mandamus panel treated the two inquiries as coextensive, we note that a writ of mandamus is only available to remedy an incorrect victim status determination under the CVRA, and is not available to correct an erroneous victim status determination under the Guidelines. See 18 U.S.C. § 3771(d)(3). Though the mandamus panel could have ordered the vacatur of the

-9-

appearance is bolstered by the court's order of March 3, 2015, which also collapsed the two victim status determinations. We therefore cannot find, on the record in this case, that the district court properly determined whether M.U. was a victim under § 2B1.1 of the Sentencing Guidelines such that the financial losses he suffered should increase Binkholder's ultimate sentence. Because these two inquiries are distinct, the court was required to make two separate determinations: M.U.'s victim status under the CVRA (for the purpose of protecting M.U.'s rights and determining restitution), and M.U.'s victim status under the Guidelines (for the purpose of calculating the loss associated with Binkholder's offense to determine the total offense level and, ultimately, the appropriate sentence). The mandate from this court dictated the result on the former question. But because the district court's February 9, 2015, order was vacated, the only ruling on the record as to the latter question is the one made at sentencing, and that ruling improperly collapsed the two inquiries, relying on the CVRA determination as dispositive of the Guidelines determination. On this issue, therefore, we reverse and remand, so that the district court may determine in the first instance whether M.U. was a victim under the Guidelines and, if necessary, proceed to resentencing.

## V. Restitution

Binkholder's third argument is that the district court erred in calculating the restitution owed to three victims, A.B., R.W., and M.U.. He asserts that the calculated restitution for A.B. and R.W. should have been based on the fair market value of the properties securing their investment, but that the fair market value was never properly determined. With regard to M.U., Binkholder asserts that the amount of restitution calculated in the PSR, and ultimately imposed by the district court, was contradicted

district court's March 3 order only, leaving the district court's victim status determination as to sentencing intact, we do not read its succinct order finding M.U. to be a victim under the CVRA to resolve the question of whether the CVRA and Guidelines victim status determinations are coextensive.

by other record evidence. Because Binkholder did not object to the calculation of restitution as to any of these victims at sentencing, we review this claim for plain error. United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005). Binkholder must show "(1) error, (2) that is plain, . . . (3) that affects substantial rights[, and] . . . (4) [that] seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 550 (quoting Johnson v. United States, 520 U.S. 461, 467–68 (1997)).

In support of his argument that the restitution owed to A.B. and R.W. was improperly calculated, Binkholder broadly asserts only that the PSR did not indicate the method of valuing the properties. Though he is correct that the fair market value of the property is the appropriate measure of restitution, USSG § 2B1.1 cmt. n.3(E)(ii), and that victims are only entitled to restitution in the amount of their provable loss, United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008), he fails to explain how the calculation of restitution in the PSR was incorrect. Nor does he explain how the amount of restitution imposed differs from the fair market value of the properties. On the other hand, the PSR clearly set out the details of each victim's investment with Binkholder and calculated the restitution losses for each victim based on these investment amounts. At sentencing, the district court heard statements from several victims, including A.B., and ultimately ordered payment of restitution as calculated in the PSR. With no more specific argument than Binkholder presents, we cannot conclude that the district court committed plain error when determining the amount of restitution owed to A.B. and R.W.

The restitution owed to M.U.[7] as calculated in the PSR, and the amount ultimately imposed by the district court, was $1,205,000. This calculation was based on the total amount of M.U.'s investment in Binkholder's scheme, minus the amount of principal investment that had been repaid. Binkholder argues that the correct amount of restitution was $1,045,000, citing M.U.'s testimony, the testimony of an FBI agent, and the plea agreement in support of that argument. Specifically, the FBI agent testified that Binkholder owed M.U. $1,033,000, and the plea agreement estimated M.U.'s loss at $1,075,000. Though M.U. testified about certain specific principal investments, he did not provide a total estimate of his loss. But the fact that varying estimates of M.U.'s losses were presented at various points in the case does not by itself indicate that the district court's ultimate determination was erroneous, much less plainly so. The calculation in the PSR was the latest assessment of M.U.'s loss, and the only one not characterized as an estimate. And Binkholder provides no specific argument as to why the ultimate calculation was incorrect, beyond merely pointing out the inconsistency with previous estimates (which were themselves inconsistent). On this record, where the district court found the facts to be as presented in the PSR and imposed restitution accordingly, we cannot conclude that the court plainly erred in its determination of the restitution owed to M.U..

## VI. Ineffective Assistance of Counsel

Finally, Binkholder argues that he received ineffective assistance of counsel at sentencing with regard to the calculation of loss and his right to appeal that calculation. We decline to consider this issue on direct appeal. United States v. Sanchez-Gonzalez, 643 F.3d 626, 628 (8th Cir. 2011) (we review ineffective

---

[7]We note that Binkholder here challenges only the amount of restitution ordered, and our review of this calculation does not reflect on M.U.'s status as a victim under the Sentencing Guidelines. We leave to the district court to determine in the first instance whether its decision on M.U.'s status as a Guidelines victim affects the amount of restitution owing.

assistance of counsel claims on direct appeal only in "'exceptional cases,'" where the factual record is fully developed, counsel's error is readily apparent, or a plain miscarriage of justice would result) (quoting United States v. Hernandez, 281 F.3d 746, 749 (8th Cir. 2002)). None of the circumstances that would support review of this issue on direct appeal are present in this case.

## VII. Conclusion

For the foregoing reasons, we reverse and remand for the district court to determine whether M.U. was a victim of Binkholder's offenses for sentencing purposes, and if necessary to proceed to resentencing. We otherwise affirm the judgment of the district court.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from Part IV of the court's opinion. The court holds that the district court erred when it relied on our mandate to conclude that M.U. was a victim under the Sentencing Guidelines. According to the court, our mandate directed the district court to recognize M.U. as a victim *only* under the CVRA, but had no effect on the question of whether M.U. was a victim for sentencing purposes. The court faults the district court for not conducting a separate inquiry into whether M.U. was a victim under the Sentencing Guidelines. In my view, the district court faithfully applied our mandate, which clearly directed the court to recognize M.U. as a victim for restitution *and* sentencing. Some brief context is necessary.

The district court held an evidentiary hearing on January 27, 2015 to determine whether M.U. was a victim for sentencing purposes. On February 9, the district court issued an order finding that M.U. was not a victim because he was a "knowledgeable and willing participant" in Binkholder's illegal activities. The order did not discuss restitution or the CVRA. M.U. then filed a motion, pursuant to the CVRA, asking the

district court to reconsider its February 9 decision and to recognize him as a victim. On March 3, the district court issued an order denying M.U.'s motion to reconsider. The court did not separately analyze M.U.'s alleged victim status under the CVRA, instead concluding that M.U. could not intervene under the CVRA because the district court had already determined—in its February 9 order—that M.U. was not a victim. M.U. next filed a petition for a writ of mandamus asking this court to order the district court to recognize M.U. as a victim. We granted M.U.'s petition and directed the district court to "vacate its February 9, 2015, order and to enter an order recognizing [M.U.] as a crime victim pursuant to the [CVRA]."

The order to the district court reveals that the mandamus panel assumed that the same analysis applies under the CVRA and the Guidelines. If the mandamus panel had thought that resolving this issue under the CVRA and the Guidelines required distinct analyses, it would have directed the district court to vacate its *March 3* order and to recognize M.U. as a victim only for purposes of restitution. Instead, the mandamus panel directed the court to vacate its February 9 order—the order in which it determined that M.U. was not a victim *for sentencing purposes*—and to recognize M.U. "as a crime victim pursuant to the [CVRA]."[8] The mandamus panel's order did not suggest that the district court erred by applying the same analysis to both issues; instead, the order indicated that the district court erred when it made the initial victim-status determination. In my view, then, the district court properly interpreted our

---

[8]In my view, the court misinterprets language from the mandamus panel's order where the panel directs the district court to "enter an order recognizing [M.U.] as a crime victim pursuant to the [CVRA]." The court appears to read the above quote as ordering the district court to recognize M.U. as a victim for purposes of applying the CVRA—*i.e.*, for providing restitution. Instead, I read "pursuant to the [CVRA]" as merely citing the procedural mechanism which allowed M.U. to intervene and seek review of the district court's determination that he was not a victim. *See* 18 U.S.C. § 3771(d)(3) (allowing victims to "petition the court of appeals for a writ of mandamus" and requiring the court of appeals to issue a decision "within 72 hours after the petition has been filed").

-14-

mandate and faithfully applied it by recognizing M.U. as a victim under the Guidelines and including M.U.'s losses when calculating Binkholder's advisory sentencing guidelines range.[9] *See United States v. Castellanos*, 608 F.3d 1010, 1016 (8th Cir. 2010) (discussing the mandate rule and noting that "inferior tribunals are bound to honor the mandate of superior courts within a single judicial system" (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995))).

Moreover, I agree with the mandamus panel's view that in this case the district court should apply the same victim-status inquiry for sentencing and restitution. The court points out that the Guidelines and the CVRA provide slightly different definitions of "victim." Under the Guidelines, the term is defined as "any person who sustained any part of the actual loss determined under subsection (b)(1)." USSG § 2B1.1 cmt. n. 1. The CVRA, in contrast, defines "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). The court also notes the distinct purposes of the two laws: the CVRA is intended to protect the rights of victims, whereas the Guidelines' loss enhancements are designed to measure the defendant's culpability. Finally, the court provides examples where the two calculations differ. *See, e.g.*, *United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012). The court then concludes that "the determination of who is a victim under the CVRA is not necessarily dispositive of who is a victim under the Sentencing Guidelines."

---

[9]Certainly the mandamus panel could have—and perhaps should have—directed the district court to vacate only its March 3 order and to recognize M.U. as a victim only for purposes of awarding restitution. Whether the mandamus panel erred in directing the district court to find that M.U. was a victim for sentencing purposes is a difficult question. I would not reach this issue because Binkholder does not raise it, nor does he claim that the panel's mandate violated due process. Instead, Binkholder argues only that the district court erred in interpreting the mandamus panel's mandate. Because I believe that the mandamus panel did, in fact, order the district court to find that M.U. was a victim for sentencing purposes, I would reject Binkholder's argument and affirm the district court's decision.

In my view, the text of the CVRA and the Guidelines provide little basis for the court's position that they adopt different standards for determining whether someone in M.U.'s position is a "victim." The cases the court relies on establish that the *amount* of loss calculated under the Guidelines can differ from the amount of restitution owed under the CVRA. *See, e.g.*, *United States v. Niebuhr*, 456 F. App'x 36, 38 (2d Cir. 2012) (unpublished). But the issue in this case is whether there is any difference in making the threshold determination of whether M.U. is a victim in the first place. More specifically, the issue is whether the CVRA and the Guidelines adopt different standards for determining whether a person's complicity in a defendant's illegal scheme precludes finding that the person is a "victim" of that scheme. The court does not cite to any case suggesting that the Guidelines and the CVRA provide different standards for resolving this issue, nor does the court explain how any hypothetical distinction would be relevant in this case. And to the extent that the two definitions vary, the CVRA appears to provide the narrower definition: the Guidelines only require that a victim "sustain[] any part of the actual loss," USSG § 2B1.1 cmt. n. 1, whereas the CVRA requires "direct[] and proximate[] harm[] as a result of the commission of a Federal offense," 18 U.S.C. § 3771(e)(2)(A). Thus, even if there are different standards for making an initial victim-status determination, a finding that a person is a victim under the CVRA's narrower definition necessarily requires finding that the person is also a victim under the apparently broader definition in the Guidelines.

Accordingly, I respectfully dissent from Part IV of the court's opinion.

———————————————

-16-