# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1596

_____

United States of America

*Plaintiff - Appellee*

v.

Yahya Jawad

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 9, 2017
Filed: March 27, 2017

_____

Before RILEY,[1] Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Yahya Jawad challenges his sentence of 41 months imprisonment for trafficking in counterfeit mark goods in violation of 18 U.S.C. § 2320(a)(1), asserting

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

the district court[2] erred in calculating the value of the counterfeit goods and denying Jawad an acceptance-of-responsibility reduction, and abused its discretion by setting a substantively unreasonable sentence. Having appellate jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

In April 2014, the Michigan Department of State Police executed a traffic stop of Jawad during which he consented to a search of his van and trailer. As a result of this search, police officers discovered and seized a variety of counterfeit property, including purses, shoes, and belt buckles. The total value of the counterfeit items was estimated to be approximately $140,060. Jawad was convicted of possession of counterfeit property in Michigan state court and was required to pay a fine.

Jawad again came to the attention of law enforcement approximately nine months later. Jawad ran a liquidation or "Clearance Sale" in an abandoned store in Cedar Rapids, Iowa, in January 2015. Undercover agents from Homeland Security Investigations (HSI) paid a $7 fee to gain entry to the event, where employees identified Jawad as the manager. Jawad admitted merchandise in his booth, such as knock-off "Beats by Dr. Dre" headphones and phony designer purses, was counterfeit. HSI agents seized all merchandise in Jawad's possession, valued at $156,650. On September 29, 2015, Jawad pled guilty to a one-count information charging him with trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1). The magistrate judge ordered Jawad released before sentencing on a personal recognizance bond with supervision.

While released on supervision, Jawad once again found himself violating the law. In December 2015, less than three months after Jawad pled guilty in Iowa

---

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

federal court, Kansas law enforcement officers attended a "Nationwide Liquidation" event in Topeka, Kansas, to ensure the event complied with state regulations. A woman collecting a $6 "membership" fee at the doors to the abandoned grocery store told officers Jawad was in charge of the event. The officers verbally warned Jawad. Jawad assured the officers he would comply with all applicable regulations, including making sure vendors were not selling counterfeit goods. Undercover officers later returned to conduct a controlled buy. The undercover officers purchased hats and sunglasses that were determined to be counterfeit, including several pairs of counterfeit Ray-Ban sunglasses the undercover officers purchased directly from Jawad, along with caps bearing logo marks of Adidas, North Face, Nike, and Under Armour. Law enforcement then executed a search warrant and secured the entire premises. Only a portion of the merchandise at the sales event was seized because of the sheer amount of goods involved.

Jawad admitted the entrance fees collected went to him to "offset some of the expenses that he has to pay" in setting up and running the sales event. When asked where he obtained the merchandise, Jawad would only state the merchandise came from UPS. Boxes containing merchandise recovered at the sales event were addressed to Yahya Liquidation Sale, the name of Jawad's business, and other paperwork and business supplies such as credit card readers were registered to Yahya Jawad or Yahya Collections. The total value of the merchandise seized was estimated at $284,000.

Back in Iowa federal court, Jawad was sentenced on February 22, 2016. The government sought an enhancement pursuant to United States Sentencing Guidelines (U.S.S.G. or Guidelines) §§ 1B1.3(a)(2) and 2B1.1, treating Jawad's Michigan conviction and the Kansas sale as relevant conduct in calculating the infringement amount of Jawad's offense of conviction. The government recognized the approximately $140,000 valuation from the Michigan conviction, the $156,000 valuation from the Iowa sale, and the $284,000 valuation from the Kansas sale would

-3-

qualify Jawad for a fourteen-level enhancement, however, "out of an abundance of caution, particularly related to the Michigan amount seized since we can't get our hands actually on it," the government only recommended a twelve-level enhancement. See id. § 2B1.1(b)(1)(G)-(H). Jawad contended a ten-level enhancement was appropriate because only the merchandise Jawad was personally responsible for in the Kansas sale should be included in the total value because Jawad's "involvement was limited to accepting the $6 entry fee and the items contained in" only his booth. See id. § 2B1.1(b)(1)(F).

The district court found the Kansas sale was relevant conduct to the offense of conviction and agreed with the government that the value of all merchandise seized at that event should be included in the total value of the infringement amount for purposes of U.S.S.G. § 2B1.1. Because "easily the amount fits within more than 250,000, but less than 550,000," the district court applied a twelve-level enhancement.

Jawad further argued for a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) because he pled guilty and was compliant and forthcoming with investigators. The government objected to the reduction, suggesting Jawad clearly did not accept responsibility for his actions because he persisted in a "blatant re-offense of that which he had pled guilty to . . . in Iowa." The district court agreed with the government that Jawad did not accept responsibility. As the district court observed, "[w]hen you are out on pretrial release, which is trusting someone to go out and remain free of crime and he goes and sets up another sale out of state, that argues very strongly against a break in sentencing for acceptance of responsibility." Accordingly, Jawad's total offense level was 20. With a criminal history category I, Jawad's advisory Guidelines sentencing range was 33 to 41 months imprisonment.

The district court then indicated it was inclined to sentence Jawad above his advisory Guidelines sentencing range and that "the more appropriate sentence is around a five year sentence." The district court found Jawad's conduct exhibited a "total and complete lack of respect for the laws of the United States" and demonstrated Jawad is "somebody who continually violates the same law or regulation time after time." Citing a need to reflect the seriousness of the offense and to deter Jawad from future crimes, the district court sentenced Jawad to 41 months imprisonment. Jawad filed this timely appeal, (1) contending the district court erred in calculating his advisory Guidelines sentencing range because it (a) applied a twelve-level increase for the amount of loss when it erroneously calculated the loss amount, and (b) failed to apply a two-level reduction for acceptance of responsibility, and (2) claiming his sentence is substantively unreasonable.

## II. DISCUSSION

Though Jawad does not contend the Kansas sale itself should not be included as relevant conduct, Jawad asserts the district court should have only included the economic value of the goods for which he was personally responsible during the Kansas sale, instead of including the value of all merchandise seized from the event, when it calculated the infringement amount of his offense and relevant conduct pursuant to U.S.S.G. § 1B1.3. We review the application of sentencing enhancements and reductions de novo, and review the underlying factual basis, such as the value of the infringement amount, for clear error. See United States v. Borders, 829 F.3d 558, 567 (8th Cir. 2016).

Specific offense characteristics, like the infringement amount, are determined by including "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B); see also id. § 1B1.3(a)(2). Thus, in calculating a defendant's advisory Guidelines sentencing range for an economic offense involving theft,

property damage, or counterfeit goods, the defendant "can be held liable for any loss from activities reasonably foreseeable, within the scope, and in furtherance of, the criminal activity." Borders, 829 F.3d at 568.

By his own admission, Jawad was "in charge" of the Kansas sales event. At Jawad's sentencing hearing, the evidence demonstrated Jawad held the keys to the building where the sales event was held and used the entrance fees to offset his expenses in running the event. The investigators also found "[c]hecks, card readers, business cards . . . national liquidation cards and connections to websites" that were associated with some variation of Jawad's name or his "Yahya" business. The shipping labels on boxes of the counterfeit merchandise found throughout the event space were addressed to "Yahya Liquidation Sale." It is clear from this evidence Jawad had a major role in organizing and arranging the Kansas sales event. As the organizer of an event specializing in the sale of "knock-offs," and of similar events around the country, Jawad cannot claim other vendors' sales of counterfeit goods were not reasonably foreseeable or beyond the scope of his undertaking. See United States v. Adejumo, 772 F.3d 513, 533 (8th Cir. 2014) ("In determining the individual defendant's relevant conduct, the district court must look at what the individual has agreed to do and whether the actions of others in the conspiracy were foreseeable from his vantage point.").

The main point of Jawad's argument against including all goods seized at the Kansas sale is that the district court valued the counterfeit goods "[i]n a glaringly inconsistent manner" by including only the counterfeit goods he personally held for sale in the valuation of goods for the Iowa sale. If anything, this argument points to a potential *undervaluation* of the infringement amount resulting from Jawad's criminal conduct—because Jawad was similarly in charge of the Iowa sales event, all counterfeit merchandise from that event reasonably could be included in calculating the amount of the infringement. The district court did not err in including the full

value of the goods seized in the Kansas sale in Jawad's infringement amount and applying a twelve-level enhancement.

The district court similarly did not err in denying Jawad the requested two-level reduction for acceptance of responsibility. A district court can properly consider various factors in determining whether the defendant has accepted responsibility, including whether he "truthfully admitt[ed] the conduct comprising the offense(s) of conviction" and "voluntar[il]y terminat[ed] or withdr[ew] from criminal conduct or associations." U.S.S.G. § 3E1.1 cmt. n.1(A)-(B). "[W]e will reverse the district court's denial of a reduction 'only if it is so clearly erroneous as to be without foundation.'" United States v. Binkholder, 832 F.3d 923, 927 (8th Cir. 2016) (quoting Adejumo, 772 F.3d at 536). Here, the district court had a strong foundation upon which to base its denial of an acceptance-of-responsibility reduction. While Jawad did admit the conduct underlying his conviction, he did not voluntarily terminate or withdraw from his involvement in criminal conduct. "[C]ontinued criminal conduct, even if minor and unrelated to the offense of conviction, can make a sentence reduction for acceptance of responsibility inappropriate." United States v. Ngo, 132 F.3d 1231, 1233 (8th Cir. 1997). Certainly, if subsequent minor, unrelated criminal conduct makes an acceptance-of-responsibility reduction inappropriate, so too does continued involvement in the same criminal conduct as the offense of conviction.

Finally, Jawad maintains his sentence was substantively unreasonable. While the district court did sentence Jawad at the top of his advisory Guidelines range, "'it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). "Jawad's total and complete lack of respect for the laws of the United States," as the district court noted, and Jawad's disrespect for the rightful property rights of others, evidenced

especially by Jawad's continued criminal conduct while on pretrial release, justify the district court's determination that Jawad is "at high risk to recidivate because [he doesn't] care." While the district court recognized Jawad has no history of alcohol or substance abuse, the district court set a sentence it felt reflected the seriousness of Jawad "stealing the mark of manufacturers who have expended consider[able] time and money to develop the mark" and then "deceiv[ing] the customer," which could have a "potential impact on the American economy and the business people that work hard to produce responsible and respected goods." The district court did not fail to consider a relevant factor, give significant weight to an improper or irrelevant factor, or commit a clear error of judgment in weighing the appropriate factors, and thus did not abuse its discretion in sentencing Jawad. See United States v. Funke, 846 F.3d 998, 1000 (8th Cir. 2017).

## III.    CONCLUSION

We affirm in all respects.

_____