# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2069

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Meggan Alexander,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted: December 16, 2011
Filed: May 14, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following a jury trial, Appellant Meggan Alexander was convicted of one count of knowingly making false statements in connection with a loan offered for insurance by the Department of Housing and Urban Development (HUD), in violation of 18 U.S.C. § 1010, and three counts of knowingly making false statements for the purpose of influencing a financial institution insured by the Federal Deposit Insurance Corporation (FDIC), in violation of 18 U.S.C. § 1014. Alexander appeals, raising a number of challenges to her convictions and sentence. Pursuant to the following analysis, we conclude that the government failed to present sufficient evidence to support the jurisdictional element as to the three counts under section 1014.

Alexander's convictions as to these counts are therefore vacated. We affirm Alexander's conviction under section 1010. We remand the case for resentencing.

## I. Background

In early 2007, Alexander began the process of buying a home with a HUD-insured mortgage from Bank of America, N.A. To that end, Alexander met with a loan officer, Kimberly Maas, who assisted Alexander in preparing a universal residential loan application. In the application, Alexander is listed as being employed at Comprehensive Systems as a nurse. The application also indicates no outstanding judgments against Alexander.

However, Alexander quit her employment with Comprehensive Systems on February 26, 2007. After that date, Alexander was not employed in a nursing capacity with any employer. Alexander also had an outstanding judgment against her for approximately $1,600 arising from a conviction for shoplifting.

On April 2, 2007, Alexander attended a home closing at a branch location of Bank of America located in Mason City, Iowa. At the closing, Alexander signed the uniform residential loan application prepared by Maas and that lists Bank of America, N.A. as the mortgage lender. The application stated Alexander was employed at Comprehensive Systems and that she had no outstanding judgments against her. A closing agent, Jamie Hejlik, instructed Alexander to review the application to make sure it was accurate. Alexander looked through the document, made no corrections, and initialed and signed as instructed.

After securing a mortgage and moving into her home, Alexander failed to make payments on the mortgage. Alexander and her husband sent two hardship letters seeking to forestall foreclosure. In the first letter, dated September 17, 2007, Alexander represented that she was forced to quit her nursing position in June 2007

because of an unpaid traffic ticket that disallowed her from driving to work. In the second letter, dated June 23, 2008, Alexander represented that "[j]ust months after moving in," the kitchen ceiling collapsed from a hidden leak in the upstairs bathroom, making visible "large amounts of black and white mold." Alexander stated that she quit her job as a nurse at that time, apparently to deal with the condition of the house. Bank of America, successor in interest to Bank of America, N.A., acquired title to the house through foreclosure proceedings and then transferred title to HUD.

In September 2010, a grand jury returned a second superseding indictment charging Alexander with five offenses relating to her mortgage. The charges included one count of knowingly making false statements in connection with a loan offered for insurance by HUD, in violation of 18 U.S.C. § 1010 (Count 1), and four counts of knowingly making false statements for the purpose of influencing "Bank of America," a financial institution insured by the FDIC, in violation of 18 U.S.C. § 1014 (Counts 2-5).

The jury found Alexander guilty of Counts 1, 2, 4, and 5. Alexander filed a motion for a new trial and a motion for a judgment of acquittal. The district court denied both motions and sentenced Alexander to 24 months of imprisonment as to each of the counts, with the terms of imprisonment to run concurrently. In addition, the district court imposed a one-year term of supervised release as to Count 1, and a five-year term of supervised release as to each of Counts 2, 4, 5, with the terms of supervised release to run concurrently. The court also imposed a $400 special assessment and ordered Alexander to pay $113,113.68 in restitution.

## II. Analysis

In her appeal, Alexander raises a number of arguments to challenge her convictions and sentence. First, she argues the government failed to present sufficient evidence to meet the jurisdictional element as to Counts 2, 4, and 5. Second, she argues there was insufficient evidence she knowingly lied on her loan application.

Third, she claims the district court erred in its determination as to the amount of loss. Finally, Alexander asserts the district court erred in excluding evidence that she rejected a plea deal. We address each claim in turn.

## A. Convictions under 18 U.S.C. § 1014

Alexander first challenges the sufficiency of the evidence for her convictions on Counts 2, 4, and 5 brought pursuant to 18 U.S.C. § 1014. She argues the government failed to present sufficient proof of FDIC insurance of Bank of America, N.A., the bank that financed her mortgage, and Bank of America Mortgage, the entity that received her two fraudulent hardship letters. "We review sufficiency challenges de novo, 'viewing the evidence in the light most favorable to the verdict, accepting all reasonable inferences that support the verdict, and reversing only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Reaves, 649 F.3d 862, 868 (8th Cir. 2011) (citation omitted).

The counts in the indictment are based on distinct representations made or adopted by Alexander in order to secure and maintain the mortgage. Count 2 is based on the false statements included in the universal residential loan application indicating that Alexander was then currently employed by Comprehensive Systems and that there were no outstanding judgment against her. Counts 4 and 5 are based on Alexander's false representations in her two hardship letters from September 2007 and June 2008 that she was employed at the time she secured her mortgage and that she only ceased work months after moving into the home.

To sustain a conviction under section 1014, the government was required to prove that Alexander knowingly made a false statement to an FDIC-insured institution with the intent to influence the institution's actions. See United States v. Jenkins, 210

F.3d 884, 886 (8th Cir. 2000).[1] Alexander's false statement need not have been made directly to the FDIC-insured institution so long as Alexander made the statement knowing it would reach a financial institution. See United States v. Bellucci, 995 F.2d 157, 159 (9th Cir. 1993) (per curiam). A lending institution's FDIC-insured status is an essential substantive and jurisdictional element for a charge under section 1014 and must be proven beyond a reasonable doubt. United States v. Platenburg, 657 F.2d 797, 799 (5th Cir. 1981); see also In re Winship, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); United States v. White, 882 F.2d 250, 253 (7th Cir. 1989) (recognizing "there is no (or only the most attenuated)" federal interest in protecting affiliates of FDIC-insured bank where funds of the FDIC-insured entity are not at risk).

Alexander concedes she agreed to a stipulation that provided that Bank of America and its branch location in Mason City, Iowa, where she signed her loan application documents, were FDIC insured. The stipulation definitively established that Bank of America was FDIC insured. See United States v. Harris, 344 F.3d 803,

---

[1] The version of 18 U.S.C. § 1014 in effect at the time of Alexander's statements sets forth in relevant part:

> Whoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. . . .

18 U.S.C. § 1014 (2001).

805 (8th Cir. 2003) (per curiam) (finding stipulation conclusively established defendant's status as a felon). However, Bank of America, N.A. is the entity listed on the application as the lending corporation. Therefore, in order to satisfy the jurisdictional element for purposes of section 1014, the government could demonstrate either (1) that Bank of America, N.A. was FDIC insured, or (2) that Bank of America was Bank of America N.A.'s alter ego so that Bank of America's FDIC-insured status was implicated in the case.[2] See United States v. Walsh, 75 F.3d 1, 9 (1st Cir. 1996) (mortgage fraud perpetrated against subsidiary loan company that was not FDIC insured still violates 18 U.S.C. § 1344 where fraud perpetrated against the subsidiary was "effectively a fraud" against FDIC-insured parent company that was "practically an alter ego" of its subsidiary).

Alexander is correct that there is no evidence in the record to show that—absent a connection to Bank of America—Bank of America, N.A. or Bank of America Mortgage were independently FDIC insured. The only evidence of FDIC insurance was the stipulation signed by Alexander, which failed to include any mention of Bank of America, N.A. or Bank of America Mortgage.

_____

[2] The government could also have met its burden by submitting evidence that, although her loan was funded by Bank of America, N.A., Alexander actually intended that her false statements be relayed to Bank of America in order to influence Bank of America. See United States v. Shaid, 730 F.2d 225, 232 (5th Cir. 1984) ("[T]he essence of a § 1014 offense is the making of the false statement with the *intent* to influence the lender, and it is not dependent upon the accomplishment of that purpose."); see, e.g., United States v. White, 882 F.2d 250, 254 (7th Cir. 1989) ("It would be enough if White had known that the loan he was getting from the leasing corporation would be assigned to the bank."). However, the government makes no such argument on appeal and fails to point to any evidence which would evince such knowledge or intent on the part of Alexander.

As a result, our review turns to whether there was sufficient evidence to prove that Bank of America, N.A. and Bank of America Mortgage were alter egos of Bank of America so that Bank of America's FDIC-insured status extended to them. This is familiar territory for the government, as it rested on this "same entity" theory at trial. During their testimony, bank employees and other witnesses involved in the loan process used the terms "Bank of America," "Bank of America, N.A.," and "Bank of America Mortgage" interchangeably. Likewise, although the loan application and several other documents in evidence refer to "Bank of America, N.A." as the lender, other documents, including one of Alexander's hardship letters, occasionally reference "Bank of America" as the lender. The government insists that all three "Bank of America" titles "refer to the same entity and that was the entity to which defendant made her false statements." The government asks that the FDIC-insurance stipulation be read broadly to encompass all three "Bank of America" entities. In support, the government points to United States v. Chandler, 66 F.3d 1460, 1465-67 (8th Cir. 1995), where we found that the FDIC-insured status of a parent company extended to its wholly-owned subsidiary for purposes of 18 U.S.C. § 657, another bank fraud statute.

After our review of the trial record in the present case, we must conclude that the government failed to present sufficient evidence which would allow a reasonable jury to find that Bank of America, N.A. and Bank of America Mortgage were wholly-owned subsidiaries or alter egos of Bank of America. In Chandler, the corporate relationship between the subsidiary and its parent company was apparent and the evidence showed that funds were flowing exclusively from the parent company through the subsidiary. 66 F.3d at 1465-66. The officers and directors of the parent company in Chandler considered the loan at issue to be a loan from the parent company and recorded it on the parent company's books. Id. at 1465. In contrast, the evidence presented in the instant case does not show how the three different entities are structured or how funds were disbursed. No evidence was offered to show that the

mortgage financed by Bank of America, N.A. was actually financed by funds from Bank of America. The witnesses called by the government were low-level employees, none of whom were shown to be qualified to testify about the corporate structure of the different entities. The fact that employees used the terms "Bank of America," "Bank of America, N.A.," and "Bank of America Mortgage" interchangeably in their testimony and on internal correspondence does not establish that the entities are one and the same. Therefore, in the absence of proof that the three entities enjoyed alter ego status, the government has failed to point to any evidence in the record which would show that Bank of America, N.A. or Bank of America Mortgage were FDIC-insured. See United States v. Schultz, 17 F.3d 723, 726 & n.8 (5th Cir. 1994) (finding jurisdictional element not met where government failed to prove FDIC-insured status of local bank and failed to elicit any testimony about the relationship between the bank and a national bank association that was FDIC-insured).

Because we conclude that there was insufficient evidence in the record to establish that Bank of America, N.A. and Bank of America Mortgage were FDIC-insured, the government failed to meet its burden on the jurisdictional elements tied to Counts 2, 4, and 5.[3] We have little doubt that if the government had done a more thorough job of providing evidence of the FDIC-insurance of Bank of America, N.A. or Bank of America Mortgage or in providing evidence as to the corporate relationship between the entities our determination would be one upholding Alexander's

---

[3] Alexander also appeals the district court's jury instructions that failed to distinguish between Bank of America, Bank of America, N.A., and Bank of America Mortgage. The district court did not abuse its discretion in giving jury instructions that asked the jury to determine whether Alexander knowingly made false statements to Bank of America for the purpose of influencing the action of Bank of America and whether Bank of America was FDIC insured. However, "in light of the evidence presented at trial, the jury would have acquitted [Alexander] if it had properly applied the instruction[s]." See United States v. Johnson, 652 F.3d 918, 922 n.2 (8th Cir. 2011).

convictions as to these counts. But our role is not to remedy deficiencies in the government's case. Therefore, because the government failed to present such evidence, we must vacate Alexander's convictions as to Counts 2, 4, and 5.

## B. Conviction Under 18 U.S.C. § 1010

Alexander challenges her conviction under 18 U.S.C. § 1010 and argues there was insufficient evidence to show she had knowledge of the contents of the loan application she signed on April 2, 2007. Alexander points out that the only witness who testified as to Alexander's review of the application on April 2, 2007, was Jamie Hejlik, the closing agent. Hejlik testified she asked Alexander to review the document to make sure it was correct and to initial. According to Hejlik, Alexander looked through the document and then initialed. Alexander contends that the testimony, at most, establishes that Alexander briefly looked through the loan application and is inadequate to establish actual knowledge of the specific contents of the application.

We are not persuaded by Alexander's argument. The information in the loan application was provided by Alexander when she initiated the application process and was later reaffirmed by her signature at closing. See United States v. Davoudi, 172 F.3d 1130, 1133 (9th Cir. 1999) ("For purposes of § 1014, the false statements were made both when initially provided to the bank and when reaffirmed through a signature."). At the time Alexander attended the closing, Comprehensive Systems was still listed as her current employer on the application, even though she had resigned from that position a month earlier. Likewise, one of the questions asked "Are there any outstanding judgments against you?" The application listed a response in the negative, even though there was a judgment against Alexander for shoplifting. The jury could have credited Hejlik's testimony that she asked Alexander to look through the loan application before signing it and that Alexander did so. Cf. United States v.

Bistrup, 449 F.3d 873, 881 (8th Cir. 2006) (concluding a jury could have reasonably found defendant knowingly signed loan documents that contained misrepresentations where there was evidence that real estate closer explained mortgage documents to defendant and where defendant had falsely listed employment information).

There was sufficient evidence to show Alexander knowingly affirmed false statements in her loan application. Therefore, we must uphold her conviction under section 1010.

### C. Amount of Loss and Amount of Restitution Determinations

Alexander next challenges the district court's assessment of the amount of loss and amount of restitution at sentencing. "We review the district court's decision to award restitution for an abuse of discretion and the district court's finding as to the amount of loss for clear error." United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011). "To the extent the district court interpreted the Mandatory Victims Restitution Act (MVRA) to determine its obligations in awarding restitution, we review those interpretations de novo." Id.

"As a general rule, the amount of loss is the greater of actual loss or intended loss." United States v. Parish, 565 F.3d 528, 534 (8th Cir. 2009). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense." United States Sentencing Commission, Guidelines Manual, §2B1.1, comment. (n.3(A)(i)). "Because the damage wrought by fraud is sometimes difficult to calculate, a district court is charged only with reasonably estimating the loss using a preponderance of evidence standard." United States v. McKanry, 628 F.3d 1010, 1019 (8th Cir.) (citation and internal marks omitted), cert. denied, 131 S. Ct. 1837 (2011). In mortgage fraud cases, we have previously approved loss amount determinations based on the difference between the unpaid principal balance of a mortgaged property and

the subsequent sale price of the property.  See <u>McKanry</u>, 628 F.3d at 1019; <u>United States v. Mancini</u>, 624 F.3d 879, 881-82 (8th Cir. 2010).

The district court determined by a preponderance of the evidence that the amount of loss was greater than $70,000 based on the evidence presented at the sentencing hearing of the difference between the unpaid principal on Alexander's loan ($130,590.99) and the foreclosure sale amount ($50,000.00).

In challenging the amount of loss determination, Alexander claims that "[u]nder a proper interpretation of the Guidelines, there was no loss as Bank of America, N.A., recovered the house through foreclosure and the undisputed evidence was that, at the time of recovery, the house was worth more than the loan."  Referencing the 1099-A form filed by Bank of America, N.A. with the Internal Revenue Service, Alexander claims the property was worth $150,054.00.  At the very least, Alexander asserts that the fair market value of the home was $143,460.00, the assessed value of the property in 2007.  According to Alexander, the bank incurred no loss because the value of the house it repossessed (at least $143,460.00) exceeded the unpaid principal amount on the loan ($130,590.99).  Alexander claims the district court erred in the amount of loss determination because "HUD sold the house subsequent to Bank of America, N.A.'s full recovery."

Alexander's arguments on this point are without merit.  HUD was a victim on Count 1 by virtue of its guarantee of Bank of America, N.A.'s loan.  See <u>Mancini</u>, 624 F.3d at 881-82 (holding that a mortgage insurer is a victim in a mortgage fraud case).  Comment 3(E)(ii) of Sentencing Guidelines section 2B1.1 directs that

> [l]oss shall be reduced by the following: . . . .  In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the

> collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

USSG §2B1.1, comment. (n.3(E)(ii)). If the property had not been disposed of at the time of sentencing, then the district court could look to the "fair market value of the collateral." Id. However, the property had already been sold at a foreclosure sale and so the amount of loss was offset by "the amount the victim ha[d] recovered at the time of sentencing from disposition of the collateral." Id. Therefore, the court's calculation of over $70,000 in loss was proper under the Guidelines and was supported by a preponderance of the evidence.

Alexander also argues the lower amount received as a result of the sale by HUD was unforeseeable. She claims HUD sold the house in a commercially unreasonable manner, HUD obtained an improper appraisal, and there were hidden defects and subsequent acts that damaged the value of the property. Alexander may be correct that the foreclosure sale may not have provided an optimal outcome; however, she has failed to cite any authority to support her contention that the foreclosure sale was commercially unreasonable. At the sentencing hearing, the evidence demonstrated that the property was listed with a realtor for approximately 10 days, advertised on the realtor's website and in a Multiple Listing Service (MLS) listing, and then sold at auction. Alexander has failed to point to any evidence or law that would show that the steps taken were not reasonable or that further actions were required. Furthermore, the testimony at sentencing indicated that the loss in value to the house was due in part to the house going from "excellent" and "beautiful" shape at the time Alexander purchased it to being "a disaster" at the time of foreclosure. Indeed, "someone had taken the fixtures out of the bath or had tried to remodel or were in the process of remodeling," there was "deferred maintenance," and there were "holes in the walls." As the government points out, based on the changes to the home, the "defendant knew, or should have known, that a substantial loss to the mortgage

-12-

insurer would result when she defaulted on her loan and the property had to be sold as a foreclosed property."

We next turn to Alexander's challenge of the district court's determination as to the amount of restitution. In reviewing whether the district court abused its discretion in such a ruling, "we must first define the parameters governing the district court's obligation to order restitution." Frazier, 651 F.3d at 903. Pursuant to the MVRA, 18 U.S.C. § 3663 et seq., such an analysis includes first identifying the victims of the defendant's conduct and then determining the full amount of each victim's losses. Frazier, 651 F.3d at 903. While the amount of loss calculation looks to the greater of actual or intended loss, the amount of restitution under the MVRA "cannot exceed the actual, provable loss realized by the victims." Id. at 905. "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." Id. at 903.

Here, the entity directly and proximately harmed as a result of the commission of Alexander's offense was HUD, which guaranteed Alexander's loan. The restitution amount included sums paid by HUD for the following costs: the unpaid principal ($130,590.99), interest owed on the loan ($8,862.16), the amount expended to obtain and acquire the property ($9,870.83), and other remaining costs associated with the sale of property ($13,789.70). By taking the sum total of these costs ($163,113.68), and subtracting the amount that HUD ultimately sold the house for ($50,000.00), the district court found the amount of restitution owed to HUD was $113,113.68.

Alexander objects to the inclusion of interest and other foreclosure costs in the restitution determination, arguing that the MVRA provides no authority to include such costs. Yet the MVRA requires that the district court "shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). We note that although interest costs are to be excluded for purposes of the *loss*

-13-

amount, see USSG § 2B1.1, comment. (n.3(D)(i)), we have previously affirmed a district court's *restitution* amount that included interest and other foreclosure expenses. See United States v. Statman, 604 F.3d 529, 536-38 (8th Cir. 2010). More importantly, the interest payment did not result in any windfall to HUD, as it was responsible for making such a payment to the lender based on its guarantee of the mortgage loan. Therefore, we decline to find that interest payments and other reasonably foreseeable expenses incurred by HUD were not compensable under the MVRA.

Finally, Alexander claims that the restitution amount was excessive. Because the restitution amount was based entirely on the actual loss incurred by HUD, we reject this claim as without merit. See United States v. Moyer, 313 F.3d 1082, 1086-87 (8th Cir. 2002) (affirming restitution amount where it represented the amount that the victim bank had lost on the fraudulent loan).

Finding no error, we affirm the amount of loss and amount of restitution determinations.

## E. Plea Bargaining Evidence

In her final claim of error, Alexander argues the district court abused its discretion in failing to admit evidence that she rejected a plea agreement. Prior to trial, Alexander filed a motion pursuant to Federal Rule of Evidence 104, seeking a ruling that evidence of her rejection of a proposed plea agreement would be admissible at trial. At the pretrial conference, Alexander's counsel acknowledged that the district court was obligated to deny her motion pursuant to United States v. Verdoorn, 528 F.2d 103 (8th Cir. 1976). The district court issued a written order denying Alexander's motion.

-14-

"We review a district court's evidentiary rulings . . . for abuse of discretion . . . ." Ferguson v. United States, 484 F.3d 1068, 1074 (8th Cir. 2007). In Verdoorn, we concluded that "government proposals concerning pleas should be excludable" in order to encourage "[m]eaningful dialogue between the parties." 528 F.2d at 107. Our decisions have continued to rely on this rule. See, e.g., United States v. Greene, 995 F.2d 793, 798 (8th Cir. 1993) (finding no abuse of discretion where trial court disallowed rejection of plea agreement to show defendant's "consciousness of innocence" and stating Verdoorn "has settled the matter in our circuit"). This Court remains bound by its earlier decision. Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam). Therefore, the district court did not abuse its discretion in denying the admission of a plea bargain offer at trial.

## F. Relief

One final question remains as to whether we must remand the case for resentencing. The 24-month sentence for Alexander's conviction as to Count 1 was set to run concurrently to the other counts, with a one-year term of supervised release, and could in theory continue to stand even though the other three convictions have been vacated. However, in arriving at the Sentencing Guidelines range, the district court relied on the base offense level of 7 for a violation of 18 U.S.C. § 1014, rather than the base offense level of 6 called for by her violation of 18 U.S.C. § 1010. See USSG §2B1.1(a). With a base level of 6, and an eight level increase for more than $70,000 in loss, Alexander's offense level would be a 14. Substituting in a base offense level of 14 with her criminal history category of III, Alexander's guidelines range is 21-27 months—rather than the 24-30 month range called for if Alexander's base offense level was a 15. Because the district court relied on an incorrect sentencing guidelines range, we remand for resentencing. See 18 U.S.C. § 3742(f)(1).

### III. Conclusion

We find there was insufficient evidence presented at trial that Bank of America, N.A. and Bank of America Mortgage were FDIC-insured.  As a result, the government failed to meet the jurisdictional prong for the charges brought pursuant to section 1014.  Alexander's convictions under Counts 2, 4, and 5 of the indictment are vacated.  The $100.00 special assessment on each of these convictions is also vacated.  All other claims of error are denied.  The case is remanded for resentencing as to Count 1.

_____