OLIVER, District Judge, Concurring.
I agree with the majority that the following arguments made by the Government are clearly not well taken: (1) that the jury could infer that the banks were defrauded on evidence that the mortgage companies were wholly-owned subsidiaries of FDIC-insured banks; (2) that the jury could infer that the mortgage companies' funds were under the custody or control of the parent banks, because the mortgage companies are wholly-owned subsidiaries; and (3) that the jury could infer that "the funds obtained from the mortgage companies *556 belonged to the parent banks," because the subsidiaries' year-end profits and losses flowed up to the parent banks. Gov't Br. at 23-29. The Government's arguments are all based, in some sense, on the notion that, because the mortgage companies here were wholly-owned subsidiaries of FDIC-insured banks, that fact alone is sufficient to support a jury finding beyond a reasonable doubt that the FDIC-insured banks were defrauded. However, courts have rejected this notion, concluding that, because banks are distinct corporate entities from their subsidiaries, and the statute defines "financial institutions" as FDIC-insured banks, the entities are different for purposes of Section 1344(2). Thus, the mere fact that a mortgage company is wholly owned by a FDIC-insured parent bank is insufficient to show that the parent owned or controlled the funds, or any other assets, of its subsidiary. See, e.g. , United States v. Bouchard , 828 F.3d 116, 126 (2d Cir. 2016) ; United States v. Alexander , 679 F.3d 721, 728 (8th Cir. 2012) ; United States v. Bennett , 621 F.3d 1131, 1136 (9th Cir. 2010).
Courts have, however, upheld convictions under Section 1344(2) for bank fraud where the loans originating with a subsidiary mortgage company were shown to have a direct connection to the assets of the bank itself. United States v. Chittenden , 848 F.3d 188, 201 (4th Cir.), vacated on other grounds , --- U.S. ----, 138 S. Ct. 447, 199 L.Ed.2d 327 (2017) (evidence that subsidiary's "loans were funded from an existing line of credit with [parent corporation]"); United States v. Irvin , 682 F.3d 1254, 1272-73 (10th Cir. 2012) (sustaining § 1344(2) conviction on evidence that the "loan proceeds disbursed from [the subsidiary] ... indisputably came from the credit line extended to it by [the parent bank]"); United States v. Edelkind , 467 F.3d 791, 798 (1st Cir. 2006) (evidence "that a [bank] (not just its subsidiary) signed off on the loan" before mortgage company made it); United States v. Walsh , 75 F.3d 1, 9 (1st Cir. 1996) (evidence that subsidiary was "practically an alter ego" of the financial institution). But I again agree with the majority that the Government has not shown a connection of the type that courts generally have required to show bank fraud. The evidence adduced is insufficient to show that Defendants intended to obtain bank property under § 1344(2). Similarly, the evidence is insufficient to show that they intended to defraud the banks under § 1344(1). Cf. United States v. Rabuffo , 716 Fed. App'x 888, 895-99 (11th Cir. 2017) (convictions sustained under § 1344(1) ).
The Government admits that there was "no explicit testimony that the banks were funding the loans and that the loans were federally insured[.]" Gov't Br. at 30. Rather, it points to Puckett's ex-wife's affirmative response to the prosecutor's leading question ("[a]nd the money came from the bank[ ]") as evidence that the parent bank funded the loans. However, her single-word answer, "correct," was given in the context of questioning that made no clear distinction between the bank and the mortgage company subsidiary, the very matter that needed to be clarified. The Government also contends that the jury could infer that Defendants knew the loans came from the parent banks because Defendants had "considerable experience with mortgage lending" companies. However, there is no evidence in the record to support a finding that such knowledge would have led them to the conclusion that the lines of credit issued in this particular case were FDIC insured. Finally, the Government argues that, because Defendant Puckett made a few checks out to SunTrust Bank, a number of months after commencement of the loans, the jury could conclude that the loans were financed by a line of credit *557 from the bank and that Defendants knew this at the inception of the loan.
While it may well be that the banks were defrauded, the Government has not presented evidence sufficient to prove it. The evidence here falls far short of that which most courts have found sufficient to constitute fraud on the bank itself, such as evidence that the parent bank itself was handling draw requests on the loan, that the bank itself signed off on the loan, or that the loans were funded from an existing line of credit with the bank. I agree with the majority that, on this record, a reasonable jury could not find beyond a reasonable doubt that the evidence was sufficient to sustain the convictions of either Defendant for bank fraud or conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349.
DISSENT