In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2734

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARL P. PALLADINETTI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-CR-771-3 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 28, 2021 — DECIDED OCTOBER 25, 2021

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges.*

KANNE, *Circuit Judge.* Carl P. Palladinetti participated in a scheme to defraud lenders into facilitating certain real estate transactions. He and his co-defendants were charged with many counts of bank fraud and making false statements. The district court held a bench trial on one of the bank fraud counts. The only issue was whether one of the banks Palladinetti defrauded was insured by the Federal Deposit Insurance

Corporation ("FDIC"). The district court determined that it was and found him guilty. We affirm.

## I. BACKGROUND

*A. Scheme*

Palladinetti admits to knowingly participating in a years-long scheme to defraud lenders. He and several others used this scheme to purchase at least thirty apartment buildings in the Chicago area and resell the individual apartments as condominiums. Using a process that Palladinetti helped create, his co-defendants bought the buildings without providing down payments, while falsely representing to lenders funding the purchases that they had. Palladinetti served as his co-defendants' attorney for the purchase of the buildings and the sale of the condominiums, and as the registered agent for limited liability corporations formed to facilitate the scheme. The group recruited buyers for the condominiums and prepared their mortgage applications, misrepresenting certain facts to ensure they qualified for the loans.

On September 26, 2013, a grand jury returned a sixteen-count indictment charging Palladinetti and his co-defendants with seven counts of bank fraud, in violation of 18 U.S.C. § 1344(1) and (2), and nine counts of making false statements on loan applications, in violation of 18 U.S.C. §§ 1014 and 2. Most relevant to this appeal is count one, which involves a $345,000 mortgage that Palladinetti's wife obtained from Washington Mutual Bank, FA for the purchase of a residence located at 7024 Rockwell Street #1, Chicago, Illinois. The application for this mortgage was prepared and submitted using the group's fraudulent scheme on July 14, 2005. The

government agreed to dismiss all other counts if Palladinetti were convicted on count one.

Palladinetti and the government proceeded via bench trial on count one. Because Palladinetti stipulated to facts satisfying almost all elements of the § 1344(1) bank fraud charge in count one, the trial was limited to one issue: whether the bank he defrauded was insured by the FDIC when the mortgage application was submitted.

*B. Evidence*

The government's first nine exhibits were admitted without objection at the beginning of the trial.

The first three are certificates issued by the FDIC attesting that it insures the deposits of the institutions named therein. All three certificates share the same number: 32633. The institutions named are:

- Washington Mutual Bank, FA (Stockton, CA) (dated October 1, 1997)

- Washington Mutual Bank (Stockton, CA) (dated April 4, 2005)

- Washington Mutual Bank (Henderson, NV) (dated September 23, 2005)

The fourth exhibit is an Amended Form 10-K that Washington Mutual, Inc. submitted to the Securities and Exchange Commission ("SEC") for the year ending December 31, 2005. The 10-K includes a section that explains that Washington Mutual, Inc. owns two federal savings associations that merged and underwent a name change:

> The federal savings associations are subject to extensive regulation and examination by the [Office

of Thrift Supervision ("OTS")], their primary federal regulator, as well as the [FDIC]. On January 1, 2005, the Company's state savings bank, the former Washington Mutual Bank merged into Washington Mutual Bank, FA, and ceased to exist; subsequently, Washington Mutual Bank, FA changed its name to Washington Mutual Bank ("WMB"). …

Both of the Company's banking subsidiaries are under the common control of Washington Mutual, Inc. and are insured by the FDIC.

The government's fifth exhibit is a certified copy of a mortgage that was recorded with the Cook County recorder of deeds for the residence at 7024 Rockwell Street #1, Chicago, Illinois. The first page of the mortgage lists as the lender "Washington Mutual Bank, FA, a federal association." It is dated July 14, 2005. Included with the mortgage are an adjustable-rate rider and a condominium rider, both also dated July 14, 2005. Both list as the lender "Washington Mutual Bank, FA."

The government's sixth and seventh exhibits are Housing and Urban Development ("HUD") settlement statements—known as "HUD-1s"—that show that the lender related to the transaction at issue is "Washington Mutual Bank, F.A."

The eighth exhibit is a letter, dated January 25, 2005, from the corporate secretary at Washington Mutual Bank, FA to the OTS, the regulatory body with primary oversight over the bank at that time. In the letter, the secretary explained that Washington Mutual Bank, FA had recently merged with Washington Mutual Bank, and the resulting entity was taking the formal step of changing its corporate title to "Washington Mutual Bank," while also continuing to do business under the

name "Washington Mutual Bank, FA." The letter provided that the name change would be effective as of April 4, 2005.

The ninth and final exhibit admitted at the beginning of the trial is a Certificate of Succession in Interest issued by the OTS recognizing that the two banks had merged on January 1, 2005; that the resulting institution was "Washington Mutual Bank, FA, Stockton, California"; that that institution changed its corporate title to "Washington Mutual Bank" on April 4, 2005; and that the bank's bylaws permitted doing business under the name "Washington Mutual Bank, FA."

Three witnesses testified at the trial: Brett Hellstrom, John Lombardo, and Geraldine Schnock.

The first to testify was Hellstrom, who worked as a senior mortgage underwriter for Washington Mutual Bank from January 2005 until September 2008, when it was acquired by JP Morgan Chase. Hellstrom testified that while he was working at the bank, the name changed from "Washington Mutual Bank, FA" to "Washington Mutual Bank," but that it continued to do business under both names. During Hellstrom's testimony, the government highlighted supporting information from the 10-K, the January 25, 2005 letter to the OTS, and the OTS Certificate of Succession in Interest. Hellstrom also testified that his day-to-day duties did not change after the name change and that the bank did, in fact, continue to do business under the "FA" name.

Next to testify was Lombardo, who at the time of the trial had worked for the FDIC for twenty-six years and served as a case manager for seventeen of those years. He testified that FDIC certificates reflect the insured status of a financial institution and contain the institution's number, a unique

identifier that remains constant across name changes. Then, addressing the certificates admitted in evidence, he testified that the first shows that Washington Mutual Bank, FA was insured beginning in 1997, the second reflects a name change to "Washington Mutual Bank" in April of 2005, and the third reflects a change in the address of the main office of the bank from Stockton, California to Henderson, Nevada. Moreover, Lombardo testified that the institution number on each certificate is the same: 32633. He also said that nothing in the FDIC's records indicates a break in the institution's insured status between 1997 and 2008.

The last witness to testify was Schnock, a woman who had been a close friend of Palladinetti's for twenty years. She testified that Palladinetti asked her in 2014 to research Washington Mutual Bank's FDIC insurance status. After she pulled the institution's insurance history from the FDIC website, she corresponded with someone from the FDIC via email. She asked that person whether Washington Mutual, FA still existed and was still insured after the April 2005 name change. She testified that she received a response indicating that Washington Mutual Bank, FA no longer existed. The government did not object to the admission of the response email, though it did note that it is hearsay.

The district court weighed the evidence and concluded that the government had met its burden to show that the deposits of the lender who provided the mortgage at issue were insured by the FDIC at the relevant time. Accordingly, the court found Palladinetti guilty of bank fraud. Palladinetti now appeals, challenging the sufficiency of the evidence the district court relied on in finding him guilty.

## II. ANALYSIS

We use the same standard for a sufficiency-of-the-evidence challenge to a conviction stemming from a bench trial as we do for one resulting from a jury trial. *See United States v. O'Leary*, 957 F.3d 731, 733 (7th Cir. 2020). We have characterized such a challenge as an "uphill battle," *United States v. Angle*, 234 F.3d 326, 339 (7th Cir. 2000), where a defendant faces a "nearly insurmountable" burden, *United States v. Grayson Enters., Inc.*, 950 F.3d 386, 405 (7th Cir. 2020). "[W]e review the evidence in the light most favorable to the government, and we will overturn a … verdict only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ginsberg*, 971 F.3d 689, 695 (7th Cir. 2020) (quoting *United States v. Orlando*, 819 F.3d 1016, 1021 (7th Cir. 2016)). "We will not re-weigh the evidence or second-guess credibility determinations." *Id.*

For the district court to convict Palladinetti of bank fraud under 18 U.S.C. § 1344, the government was required to prove beyond a reasonable doubt that: "(1) there was a scheme to defraud a [financial institution]; (2) [Palladinetti] knowingly executed or attempted to execute the scheme; (3) [Palladinetti] acted with the intent to defraud; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and (5) at the time of the charged offense the bank's deposits were insured by the [FDIC]." *United States v. Friedman*, 971 F.3d 700, 712–13 (7th Cir. 2020); *see also* 18 U.S.C. § 1344.

Because Palladinetti stipulated to facts satisfying the first four elements, only the last element is disputed. We conclude that Palladinetti has not overcome his "nearly

insurmountable" burden because the district court's ruling is supported by more than enough evidence from which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

We begin with the loan document, which lists the lender as "Washington Mutual Bank, FA, a federal association." Hellstrom testified that the "FA" stands for "federal association." Moreover, the adjustable-rate rider and the condominium rider—both of which were included with the mortgage and executed on the same day (July 14, 2005)—name the lender as "Washington Mutual Bank, FA." The district court permissibly concluded that these names refer to the same entity.

The next question is whether that entity's deposits were insured by the FDIC on July 14, 2005. In early 2005, the entity was called "Washington Mutual Bank, FA." Hellstrom testified that the bank changed its name by dropping the "FA" sometime in 2005 but continued doing business under both the new and old names. This is also supported by the 10-K, a sworn statement submitted to the SEC, which indicated that "Washington Mutual Bank" merged into "Washington Mutual Bank, FA" and ceased to exist. The 10-K also says that Washington Mutual Bank, FA, the surviving entity, subsequently changed its name to "Washington Mutual Bank." This is further supported by the letters to and from the OTS, which pinpoint the change in corporate title to April 4, 2005, and likewise state that the bank is permitted to conduct business under both names.

On July 14, 2005, the date the mortgage was executed, the corporate title of the lender was "Washington Mutual Bank," but its "doing business as" name, "Washington Mutual Bank, FA," appeared on the loan documents.

The testimony of Lombardo and the FDIC certificates show that this entity was continuously insured by the FDIC from 1997 to 2008, including on the date the mortgage was executed. The first FDIC certificate reflects that, beginning in 1997, "Washington Mutual Bank, FA" was insured under certificate number 32633. Then, tracking the other name-change testimony and related documents, the second certificate, issued on April 4, 2005, shows that "Washington Mutual Bank" was insured under the same number. Finally, a certificate issued on September 23, 2005 indicates that "Washington Mutual Bank" was still insured under the same number but that its main office had moved to Nevada.

The district court permissibly concluded that the testimony and admitted exhibits presented at trial demonstrated that one entity was continuously insured from 1997 to 2008, that on the date the mortgage was executed that entity was formally called "Washington Mutual Bank" but also did business as "Washington Mutual Bank, FA," and that that entity was the lender that provided the mortgage at issue to Palladinetti's wife. This evidence, paired with the stipulations, was sufficient for a rational trier of fact to find Palladinetti guilty of bank fraud beyond a reasonable doubt.

Palladinetti relies on *United States v. Alexander*, 679 F.3d 721 (8th Cir. 2012), for the proposition that "merely pointing out that a financial entity has a similar name as an FDIC-insured financial entity, without more … is insufficient for the purpose of sustaining a conviction for federal bank related crimes." Appellant's Br. 12. In *Alexander*, the defendant stipulated that "Bank of America" was FDIC-insured, but the institutions she defrauded were "Bank of America, N.A." and "Bank of America Mortgage." 679 F.3d at 727. Because the

names were substantially different, in the absence of evidence showing that the defrauded institutions were independently FDIC-insured or alter egos of "Bank of America," there was a failure of proof on the insurance element, and the court vacated the convictions. *Id.* at 727–28. By contrast, here, the evidence was sufficient to show that the lender was "Washington Mutual Bank, FA" despite the fact that the name on the first page of the mortgage also showed what FA stands for: "a federal association." Thus, Palladinetti's reliance on *Alexander* is misplaced.

### III. CONCLUSION

For the reasons explained above, the district court did not err in finding Palladinetti guilty of bank fraud. We AFFIRM.