In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1808

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JORGE L. LEAL,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 19-cr-40069 — **J. Phil Gilbert**, *Judge*.

———————————

ARGUED MAY 19, 2023 — DECIDED JUNE 29, 2023

———————————

Before FLAUM, ROVNER, and ST. EVE, *Circuit Judges.*

FLAUM, *Circuit Judge*. Jorge Leal used a dating application to arrange a sexual encounter with a fifteen-year-old male. Unbeknownst to Leal, FBI agents were posing as the fifteen-year-old, and Leal was arrested when he attempted to meet the minor. A jury convicted Leal of attempted enticement of a minor. He now appeals the district court's denial of his motion for a judgment of acquittal, challenging an instruction given to the jury and the sufficiency of the evidence submitted

to prove that he was not entrapped. For the following reasons, we affirm his conviction.

## I. Background

### A. Factual Background

FBI agents conducted an undercover operation in Herrin, Illinois to identify and apprehend individuals using dating apps to solicit sex from minors. As part of the operation, an agent created a profile for a fictitious individual named "Clay" on a dating app called "Grindr." Since Grindr does not allow users to create a profile if they are under eighteen and will delete a profile if it determines that a user is underage, the agent represented that Clay was eighteen years old.

Another FBI agent, Michael Carter, later assumed control of the Clay profile. Carter testified that he exchanged messages with Leal and told him that Clay was fifteen years old. Shortly thereafter, Grindr deleted Clay's profile. Carter promptly created a new profile with the name "Corey." Leal initiated contact with Corey, and the following exchange occurred:

> Leal: You home alone? (8:40 PM)
> Corey: Yup (8:40 PM)
> Leal: what are you Doing? (8:40 PM)
> Corey: Just hanging out … bored wbu (8:41 PM)
> Leal: looking for fun lol (8:41 PM)
> Corey: I'm always looking for fun. Lol
> What u have in mind (8:42 PM)
> Leal: 😂
> I want to but I'm really concern about your age bro (8:42 PM)
> Corey: I understand that, but I'm almost 16 … not 9 …

I'm not a baby. (8:43 PM)

Leal: i know but not trying to go to jail (8:44 PM)

Corey: You are not going to jail babe. I would never do that (8:45 PM)

Leal: How do I know that? (8:45 PM)

Corey: Because I'm not like that. (8:45 PM)

Leal: Lol (8:46 PM)

Corey: Like I said, I'm not a baby

I'm a big boy that can make his own decisions and knows what he wants (8:46 PM)

Leal: send me location

?

Well?

see you are not serious (8:49 PM)

😂

like I said you are not serious

I'll just go home then

See ya (8:51 PM)

Corey: Sorry. Omg you are impatient. Lol. I don't have any protection can u bring condoms? (8:54 PM)

Leal: I kind of just want bj this time

? (8:57 PM)

Corey: O ok. That sounds awesome. (8:57 PM)

Leal: Where are you? (8:57 PM)

Corey: 908 n 13th. Herrin what u driving (8:57 PM)

? (8:59 PM)

Leal: A malibu (9:00 PM)

Corey: Ok. If u come to the back alley my moms red car is under an awning (9:01 PM)

Leal: Ok (9:02 PM)

Corey: Let me know when u are here. If it's easier we can text (9:02 PM)

Leal: How do I know this is not a trap? (9:09 PM)

Corey: Babe I would NEVER do that. This is  it a trap
Not* (9:11 PM)

Leal: Not sure (9:11 PM)

Corey: You have to trust me (9:11 PM)

Leal: how? (9:12 PM)

Corey: Seriously that would be so fucked up (9:12 PM)

Leal: how are you going to convince me? (9:13 PM)

Corey: Babe I don't know how to convince you … (9:13 PM)

Leal: turn some light on outside (9:18 PM)

Corey: Are u at the front? (9:19 PM)

Leal: I was (9:19 PM)

Corey: Just turned it on (9:20 PM)

Leal: There was a car in the back alley rn (9:21 PM)

Corey: Yes it my moms. Reddish car
U can come too back door too (9:23 PM)
Are u coming
? (9:24 PM)

Around the same time, an officer surveilling the area saw a Malibu drive into the alley behind the address Corey provided to Leal and stop behind the home. The officer pulled his vehicle into the alley behind the Malibu, and the Malibu accelerated. Officers stopped the vehicle shortly thereafter and found Leal behind the wheel. Leal agreed to accompany the officers for questioning and admitted to planning to receive oral sex from Corey—who he believed was under eighteen. He also told the agents that he deleted the Grindr app from his phone as he was being pulled over because he "totally knew" it was wrong to meet with a fifteen-year-old.

**B. Procedural Background**

Leal was indicted on one count of attempted enticement of a minor in violation of 18 U.S.C. § 2422(b). At Leal's request, the district court charged the jury with the pattern instruction regarding the entrapment defense. The court also provided the jury with the pattern instruction regarding the permissibility of the government's use of undercover and deceptive investigative techniques. Ultimately, the jury convicted Leal. He timely filed a motion for a judgment of acquittal, challenging, in relevant part, the evidence the government presented to disprove his entrapment defense. The district court denied Leal's motion and sentenced him to the mandatory minimum of 120 months' imprisonment.

## II. Discussion

**A. Jury Instructions**

Leal first argues that the combination of instructions regarding entrapment and the permissibility of deceptive investigative techniques confused the jury. The comments to both pattern instructions provide that before they are given together, "consideration should be given" to whether the investigative-techniques instruction should be reworded "so that it does not implicitly modify or undercut the entrapment instruction." Pattern Criminal Jury Instructions of the Seventh Circuit (2020) at 63, 130. Leal contends that the district court, the government, and his trial attorney failed to consider this risk and reword the investigative-techniques instruction accordingly. Indeed, Leal's trial counsel never raised the issue to the district court. As a result, the government argues that Leal has waived this challenge.

Under Federal Rule of Criminal Procedure 30(d), if a defendant does not object to a jury instruction "before the jury retires to deliberate," he may only challenge the instruction for plain error on appeal. Fed. R. Crim. P. 30(d), 52(b). However, we have held that a defendant's affirmative approval of a jury instruction constitutes waiver and precludes appellate review entirely. *See, e.g.*, *United States v. Friedman*, 971 F.3d 700, 711 (7th Cir. 2020) ("Although passive silence with regard to a jury instruction permits plain error review … a defendant's affirmative approval of a proposed instruction results in waiver." (alteration in original) (citation omitted)); *United States v. Morgan*, 929 F.3d 411, 432 (7th Cir. 2019) (noting that a defendant who waives his objection to a jury instruction generally "has no recourse").

Yet, given that a jury instruction conference will "[o]nly rarely … provide the opportunity for agnostic silence that preserves plain error review," we have acknowledged that "[t]his approach can sometimes produce especially harsh results." *United States v. Natale*, 719 F.3d 719, 730 (7th Cir. 2013). Thus, when nothing more than a "'no objection' [is] given during a rote call-and-response colloquy with the district court judge during a charging conference, we [have] suggested that … the court may examine whether the objection was forfeited rather than waived." *United States v. Ajayi*, 808 F.3d 1113, 1121 (7th Cir. 2015). Admittedly, some tension has surfaced in our case law in this area. *Compare United States v. Bell*, 28 F.4th 757, 763 (7th Cir. 2022) (concluding that the defendant waived his objection to jury instruction, and thus not reviewing his challenge to it, because counsel answered, "No, we don't have a problem with that," when the district court asked if he had any objection to the instruction during charging conference), *with United States v. Briseno*, 843 F.3d 264, 274

(7th Cir. 2016) (noting that counsel's cursory reply, "None at all," in response to the judge's inquiry about objections to jury instructions was not indicative of a knowing waiver).

However, here, the record reflects more than a simple "no objection," and thus, it is clear that Leal waived the objection. *See United States v. LeBeau*, 949 F.3d 334, 342 (7th Cir. 2020) ("At times, there may be some ambiguity in the defendant's statement, and so the court must decide whether it is looking at waiver or the type of negligent oversight that triggers plain-error review. In this case, however, we see no such ambiguity." (citation omitted)). Ten days before trial, the government filed its proposed jury instructions, which included the investigative-techniques instruction. In response, Leal's counsel filed a substantive objection to a different instruction but said nothing about the investigative-techniques instruction. Counsel had an opportunity to change course at the formal charging conference but chose not to. Instead, he affirmatively approved the investigative-techniques instruction by responding "no objection" and continued to press the objection to the other instruction.[1]

In other words, Leal's counsel's failure to object to the investigative-techniques instruction occurred as part of an in-depth discussion of the jury instructions. It was not off-the-

---

[1] The government points to additional instances when, it argues, Leal could have objected to the instruction but did not—like a pretrial phone conversation with the government and an off-the-record meeting with the district court's law clerks during trial. However, we may not consider these conversations because they are not reflected in the record. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1013 (7th Cir. 2021) ("[A]s a general rule[,] we will not consider evidence on appeal that was not before the district court.").

cuff, reflexive, or negligent; on the contrary, the record demonstrates that it was a knowing and intentional decision. *See United States v. Freed*, 921 F.3d 716, 720 (7th Cir. 2019) (indicating that where the instruction conference involved "in-depth discussions of other instructions," the counsel's "no objection[]" response to the jury instruction at issue "was anything but an exercise in the reflexive").

As such, Leal waived any objection to the instruction, and we will not review his challenge to it. *See, e.g.*, *Friedman*, 971 F.3d at 712 ("By choosing to pursue changes to certain instructions and forgoing multiple chances to change others, [the defendant] waived other possible jury instruction challenges."); *LeBeau*, 949 F.3d at 342 (concluding that the defendant waived objection to instruction, and thus not reviewing his challenge, where counsel affirmatively approved it during pretrial proceedings and "had the opportunity … to raise a later objection to the instruction at any time before the case went to the jury" but chose not to).[2]

## B.  Sufficiency of the Evidence

Leal next argues that the government presented insufficient evidence to defeat his entrapment defense and, thus, the district court erred in denying his motion for a judgment of acquittal. We review that decision de novo, construing "the evidence in a light most favorable to the government." *United*

---

[2] We note that even if Leal had forfeited the objection, his challenge would fail under plain error review. Leal does not cite any authority that clearly prohibits a court from giving the pattern entrapment and investigative-techniques instructions together, which dooms his argument. *See Natale*, 719 F.3d at 731 (noting that for an error to be plain, it must be "clear under current law" (citation omitted)).

*States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021). In doing so, we assess "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Faulkner*, 885 F.3d 488, 492 (7th Cir. 2018) (citation omitted). Thus, we will overturn a conviction "only where the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Godinez*, 7 F.4th 628, 638 (7th Cir. 2021) (citation omitted). We have frequently described this standard as "nearly insurmountable." *United States v. Grayson Enters., Inc.*, 950 F.3d 386, 405 (7th Cir. 2020) (citation omitted).

Once a defendant puts forth "some evidence" of entrapment, he is entitled to present the defense to the jury. *United States v. Mayfield*, 771 F.3d 417, 440 (7th Cir. 2014) (en banc) (citation omitted). The government must then prove beyond a reasonable doubt, as an element of the crime, that the defendant was not entrapped. *Id.* at 439–40. To shoulder that burden, the government must establish "*either* that the defendant was predisposed to commit the crime *or* that there was no government inducement." *Id.* at 440.

Leal argues that the government did not present sufficient evidence to disprove that the FBI agents induced him to commit attempted enticement of a minor. Government inducement requires more than merely soliciting the defendant to commit the crime. *United States v. Mercado*, 53 F.4th 1071, 1080 (7th Cir. 2022); *see also United States v. York*, 48 F.4th 494, 502 (7th Cir. 2022) ("[T]he fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement." (alteration in original) (citation omitted)), *cert. denied*, 143 S. Ct. 1772 (2023) (mem.). Instead, the government

must have solicited the crime *and* committed "some other … conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Mercado*, 53 F.4th at 1080 (citation omitted). Examples of such additional conduct include: "repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, [and] pleas based on need, sympathy, or friendship." *United States v. Garcia*, 37 F.4th 1294, 1301 (7th Cir. 2022) (alteration in original) (citation omitted).

According to Leal, the evidence establishes that Carter did more than solicit the crime—he fraudulently misrepresented Corey's age and repeatedly reassured Leal when he expressed reservations about engaging in sexual acts with a minor. However, there is another reasonable interpretation of the evidence: Despite many opportunities to end these conversations, Leal persisted in actively planning a sexual encounter with a minor.

Carter testified that he first conversed with Leal through the Clay profile, where he told Leal that Clay was fifteen years old. After Grindr deleted Clay's profile, Leal initiated the conversation with Carter's new profile (Corey) and continued pursuing him even after Corey told Leal that he was fifteen years old. Carter further testified that during the conversation, he waited to respond to certain messages to try to give Leal "an opportunity … to walk away." Indeed, the preserved messages reflect six- and eight-minute gaps between the agent's messages at certain points in the conversation. Instead of seizing that opportunity, Leal grew impatient with the minor when he did not promptly respond to Leal's request for

an address, threatening to "just go home" and challenging that Corey was "not serious" about having sex with him. The messages also show Leal initiating the encounter (by telling Corey he was "looking for fun"), selecting the particular sex act that he wanted the minor to perform, and asking for Corey's address more than once. Finally, Leal confessed to the crime and to knowing that his actions were wrong.

We have previously found comparable evidence sufficient to disprove an entrapment defense in similar contexts. *See, e.g.*, *York*, 48 F.4th at 502 (concluding that "jury had sufficient evidence to reject [the defendant's] entrapment defense" where the defendant "initiated conversations" with the undercover agent online "several times after finding out she was a minor"); *Mercado*, 53 F.4th at 1082–84 (concluding that an undercover agent "fraudulently misrepresent[ing]" his age and reciprocating sexual discussions initiated by the defendant amounted to "no more than solicitations or invitations" to commit attempted enticement of a minor); *United States v. Fitzpatrick*, No. 22-2549, 2023 WL 1962644, at *4 (7th Cir. Feb. 13, 2023) (rejecting sufficiency of the evidence argument where the defendant continued a conversation with an undercover agent after the agent said he was underage, "pursued" the minor "by insisting that he was 'interested' and 'serious'" despite initial apprehension, and driving to the minor's home).

At bottom, "[i]t is the jury's job, and not ours, to gauge the credibility of the witnesses and decide what inferences to draw from the evidence." *United States v. Brown*, 973 F.3d 667, 686 (7th Cir. 2020) (alteration in original) (citation omitted). While some parts of the conversation could reasonably be perceived as inducements, when viewing all the evidence in the

light most favorable to the government, a jury could have reasonably believed Leal was not induced to commit the crime. The jury was "free to choose" between these two "reasonable constructions of the evidence." *United States v. Colon*, 919 F.3d 510, 516 (7th Cir. 2019) (citation omitted); *see also United States v. Palladinetti*, 16 F.4th 545, 549 (7th Cir. 2021). As such, we reject Leal's challenge to the sufficiency of the evidence supporting his conviction.[3]

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3] Leal also argues that the government presented insufficient evidence to prove that he was predisposed to commit the crime. However, "there is no need to consider predisposition" here because sufficient evidence supports that Leal was not induced to commit the crime. *Mercado*, 53 F.4th at 1085; *see also Mayfield*, 771 F.3d at 439–40 (explaining "the government can defeat the entrapment defense at trial by proving *either* that the defendant was predisposed to commit the crime *or* that there was no government inducement").